UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

_____

)
JOHN DOE,                                         )
                                                  )
              Plaintiff,                          )
                                                  )        Case No.: 4:19-cv-00300-JMB
       v.                                         )
                                                  )
WASHINGTON UNIVERSITY,                            )
                                                  )
              Defendant.                          )
                                                  )
_____)

**MEMORANDUM OF PLAINTIFF IN RESPONSE TO DEFENDANT'S MOTION
TO DISMISS COMPLAINT FOR FAILURE TO STATE A CLAIM UPON
WHICH RELIEF MAY BE GRANTED**

Plaintiff, JOHN DOE, by and through his undersigned attorneys, files this

Memorandum in Response to Defendant's Motion Pursuant to Fed.R.Civ.P. 12(b)(6), and

in support of denying the Motion in its entirety, states as follows:

1.     Plaintiff is not asking the Court for a *de novo* review of the evidence, he is merely

asking for a rational review of the evidence, in a case where the evidence was so clearly

one sided that Defendant had to cite irrelevant evidence found in Plaintiff's written

appeal[1] to support its decision that Jane Roe became incapacitated after drinking 1-2

weak tasting drinks, and that John Doe should have known Jane was incapacitated when

she was speaking and acting in a totally consensual manner[2].

---

[1] *See* Defendant's Motion to Dismiss, page 6, footnote 6, which was not evidence considered by the Panel.
[2] Contrary to Defendant's Motion, page 26, where it claims Pierre v. University of Dayton, 2017 WL
1134510 (S.D. Ohio 3/27/2017) involves strikingly similar claims, the accuser in that case was not claiming
to have been black out drunk and unable to recall the occurrence, the accused student only got a 5 month

1

2.      This is a case where a Senior with a 3.8 cumulative GPA reasonably believed that he and had a consensual encounter and he was subsequently exonerated by the initial text messages Jane Roe sent to her closest friends labeling the incident "totally consensual."

3.      Despite the overwhelming evidence in his favor, in order to stack the deck against Plaintiff, Defendant decide to prosecute Jane's claim using a biased USAIB procedure, allowed John's accusers to use local media to play on existing gender bias, then took away a degree that costs roughly $300,000 plus years of hard work without even giving John a hearing, let alone a hearing that satisfied due process[3].

4.      Defendant correctly states that Fed.R.Civ.P. 8(a)(2) only requires a short and plain statement of the claims in order to state a claim for relief, then most of Defendant's Motion argues Plaintiff's 88-page, 416-paragraph Complaint with 29 Exhibits, fails to allege sufficient facts to support Plaintiff's conclusory allegations.

5.      Defendant argues Plaintiff's Constitutional claims must be dismissed because the University is a private research and educational institution, and as such, although it was operating under the color of Federal law, it is not a state actor and is therefore exempt from the Fourteenth Amendment's prohibition on depriving students of protected property and liberty interests without due process.

6.      Contrary to Defendant's arguments, Plaintiff's 88-page, 416-paragraph Complaint with 29 Exhibits pleads sufficient factual content to enable the Court to draw reasonable inferences that the Defendant is liable for the misconduct alleged in the following

---

suspension, and the procedures in that case actually had a hearing where the parties could listen to adverse witness testimony then present questions to each adverse witness.

[3] In Board of Curators of University of Missouri v. Horwitz, 435 U.S. 78 (1978), on page 87, the Supreme Court "recognized that there are distinct differences between decisions to suspend or dismiss a student for disciplinary purposes and similar actions taken for academic reasons," and indicated that a disciplinary hearing is required to satisfy due process prior to depriving a student of a protected property or liberty interest.

Counts: Count 2 (Title IX - Hostile Environment); Count 4 - Title IX - Deliberate Indifference/Selective Enforcement; Count 5 - Title IX - Erroneous Outcome Theory; Count 6 - Breach of Contract; Count 7 - Estoppel and Reliance; Count 8 - Unjust Enrichment.

7.      For purposes of deciding this Motion, the Court must assume all well pleaded facts (including circumstantial evidence) as true and may not dismiss a complaint merely because it appears unlikely or improbable that a plaintiff can prove the facts alleged or ultimately prevail on the merits.  Instead, the Court must draw all reasonable inferences in favor of the Plaintiff, must consider all direct and circumstantial evidence, and must ask whether the facts alleged raise a reasonable expectation that discovery will reveal evidence of the necessary elements.

8.      As to the Title IX Counts, Plaintiff believes the Second Circuit's lowered pleading standard (gender bias possible) should be applied to a case like this where a college student alleges intentional civil rights deprivations and wrongful expulsion by his University.  Plaintiff does not have an endowment of millions to compile and generate all relevant evidence without discovery.

9.      According to the heightened pleading standard advocated for by Defendant, a claim is plausible on its face "when the plaintiff pleads factual content that enables the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S.A. 662, 678 (2009).

**I.      CONSTITUTIONAL CLAIMS MUST STAND BECAUSE DEFENDANT IS PERFORMING A PUBLIC FUNCTION AND OPERATING UNDER THE COLOR OF STATE LAW**

10.      Since Defendant's very thorough Motion only disputes certain elements of Plaintiff's due process claims, Plaintiff's Response assumes Defendant is conceding that

the 88-page Complaint sufficiently pleads Defendant deprived Plaintiff of protected property and liberty interests without first affording him due process.

11.     For a § 1983 claim to prevail, a plaintiff must establish that defendants deprived him of a right secured by the Constitution of laws of the United States, and the defendants acted under color of state law.  *See* Blum v. Yaretsky, 457 U.S. 991, 1002-03 (1982).

12.     Unlike § 1983, "the scope of § 1985(3) is considerably broader and can reach conspiracies composed of federal officers or federal employees."  Federer v. Gephardt, 363 F.3d 754, at pg 758 (8th Cir. 4/13/2004).  If necessary to survive dismissal with prejudice, Plaintiff respectfully requests leave to file an amended complaint so that he can add the Office of Civil Rights as a co-conspirator for encouraging Defendant to prosecute all accusations of sexual assault where the accuser claims to have been incapacitated due to her voluntary consumption of alcohol.

13.     When a plaintiff brings a § 1983 claim against a defendant who is not a government official or employee, the plaintiff must show that the private person or entity acted under the color of law.  42 U.S.C. §1983.  The Supreme Court has set forth several tests for courts to employ in evaluating the range of circumstances that might constitute state action.  Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n, 531 U.S. 288, 295 (2001).

14.     As to Plaintiff's Constitutional Claims in Count I (Procedural Due Process), Count 9 (Conspiracy to Deprive Civil Rights), Count 10 - Substantive Due Process, and Count 11 (Void for Vagueness), Defendant was acting pursuant to Federal law (Title IX),

performing traditionally public functions, and its actions were encouraged, either overtly or covertly, by Defendant's reliance on Missouri law (RSMo § 536.018).

15.     Defendant must be held liable for its decision to prosecute a consensual sexual encounter as if it was sexual assault just like any local state's attorney or judge would be liable if he/she decided to convict Plaintiff in a proceeding without rules of evidence, without sworn testimony, without the right to make objections, and without a hearing where Plaintiff could listen to adverse witness testimony.

16.     Traditionally, the decision to investigate, decision to formally charge, and decision to commence a prosecution following accusations of a sexual assault were functions within the exclusive prerogative of the State.  *See e.g.* Scott v. Northwestern University School of Law, 1999 WL 134059 (N.D. Ill. 3-08/1999); *see also* Jackson v. Metropolitan Edison Co., 419 U.S. 345, at 353 (1974); Baker v. Kohn, 457 U.S. 830, at 842 (1982).

17.     In Scott, the court concluded that Northwestern University's private police force can act under the color of state law for purposes of §1983.  In reaching this holding, the court reasoned that "[T]o permit the state to delegate its police powers to Northwestern University and then shield the Northwestern police force from liability when, in exercising these powers, it violates the rights of students, employees, and visitors would pervert the language and intent of § 1983." *Id.*, pg *6.

18.     In a case like this where police and prosecutors decide not to investigate and not to prosecute allegations of sexual assault, the University is performing a public function, and should be held accountable under § 1983 and §1985(3) for its decision to prosecute Plaintiff using a procedure that did not satisfy due process.

19.     Defendant has police and prosecutorial powers and is now asking the Court to shield it from liability when, in wrongfully exercising these powers, it violated Plaintiff's civil rights.  Defendant must be held accountable for its illegal exercise of prosecutorial discretion.

20.     Although several federal courts have already found procedures arguably more fair than Defendant's failed to provide students with basic fairness and/or due process[4], Defendant has continued to unfairly prosecute male students accused of sexual assault in complete secrecy, due to its use of Missouri Revised Statute § 536.018[5] to shield its Title IX hearings from administrative review and public scrutiny.

21.     Regardless of Defendant's characterization as a state actor, Plaintiff's conviction and expulsion must be reversed since the Complaint proves the Defendant's decision that Plaintiff violated its conduct code was clearly arbitrary, capricious or unreasonable, was unsupported by competent and substantial evidence, was made upon unlawful procedure and without any trial, let along a fair trial, involved an abuse of discretion, and was in violation of constitutional provisions securing individual's basic civil rights.

22.     As the Complaint explains in sufficient detail, Defendant's USAIB procedure failed to provide constitutionally required due process safeguards against his erroneous expulsion, and as such, at a minimum, Plaintiff has sufficiently plead a cause of action for

_____

[4] See e.g. Doe v. Baum, _et al._, 903 F.3d 575 (6th Cir. 2018); Doe v. Miami University, _et al._, 882 F.3d 579 (6th Cir. 2018); Doe v. University of Cincinnati, 872 F.3d 393 (6th Cir. 2017); Doe v. Brandeis University, 177 F.Supp.3d 561 (D. Mass. 2016); Doe v. Allee, 2019 WL 101616 (Cal.App.5th).

[5] This matter was filed within 60 days of the final decision, thus making it eligible for administrative review as a "contested case," but for § 536.018 which states:

>    **536.018.  "Agency" and "state agency" not to include institutions of higher education if sufficient safeguards for contested cases provided by institutions.** — The term "agency" and the term "state agency" as defined by section 536.010 shall not include an institution of higher education, supported in whole or in part from state funds, if such institution has established written procedures to assure that constitutionally required due process safeguards exist and apply to a proceeding that would otherwise constitute a "contested case" as defined in section 536.010.

6

a judicial review since Defendant's process did not comply with the specific requirements of RSMo § 536.018 required to exempt its decision in Plaintiff's case from judicial review.

23.    State colleges and universities must ensure their Title IX hearings satisfy the Fourteenth Amendment's due process requirements, so why should anything less be expected from private colleges and universities conducting Title IX hearings pursuant to the same federal law.

24.    Defendant's Motion argues that the Complaint has not sufficiently plead an inference to show gender bias affected the outcome, but the Complaint clearly pleads sufficient facts to infer that Defendant's USAIB procedure, relevant University officials, and all three Panel members were actually biased in favor of the alleged victim of sexual assault claims.

25.    Assuming Plaintiff's allegations are true, as a student accused of sexual assault, John Doe sufficiently pleads that he failed to receive a decision from impartial decision makers.

## II.    GENDER BIAS SUFFICIENTLY ALLEGED - ALL TITLE IX CLAIMS MUST STAND

26.    The Motion generally argues that Plaintiff has only alleged conclusory allegations of gender discrimination and cites cases from around the country (including some from the Second Circuit) in support of its arguments for dismissal with prejudice of all Counts contained in this 416-paragraph Complaint.

27.    None of the Defendant's cited cases foreclose on the possibility of using the types of evidence that Plaintiff's Complaint alleges in support of an inference that gender bias affected the erroneous outcome.

28.     The Complaint in this case specifically references (a) false public statements by Plaintiff's accusers and conclusory statements by pertinent University officials that prejudiced Plaintiff's right to an impartial decision, (b) external pressures from students, local media, and the federal government to better protect its female students, (c) patters of decision-making, including Defendant's decision to ignore the 2017 Dear Colleague Letter and its public opposition to local and federal efforts to ensure students accused of sexual assault receive due process, (d) deliberate indifference by the University to harassment of Plaintiff based in part on his gender, (e) selective enforcement, (f) and procedures that fail to satisfy rudimentary fair process, but only when the University prosecutes male students accused of sexual assault.

29.     When all the allegations are accepted as true, giving the averments a liberal construction, and making those reasonable inferences fairly deductible from the facts stated, this case has alleged specific facts to support an inference that Washington University discriminated against Plaintiff, based at least in part, on his gender, creating a plausible inference that the proceedings were influenced by gender bias.

30.     Defendant correctly cites Doe v. Saint Paul Conservatory for the Performing Arts, 2018 WL 2431849, at pg *3 (D. Minn. 5/30/2018) (where the student admitted to allegations of sexual harassment) for the quotation that "[T]itle IX should be liberally construed to give school administrators...the flexibility they require to initiate a reasonable disciplinary response."

31.     Washington University is not in the business of prosecuting sexual assault claims, so this case falls outside of Defendant's area of expertise and judicial supervision is required to ensure fundamental fairness.

32.     However, no federal or state court decision has stated that school administrators should use their flexibility to deprive civil rights of accused students, then shield themselves from liability to lawsuits, and avoid public disclosure from judicial review actions, based on a completely one-sided and unfair administrative procedure.

*(A)     Erroneous Outcome (Count 5) and Hostile Environment (Count 2 Theory Title IX Claims Must Stand*

33.     Generally speaking, comments by members of the university and its officials evidencing gender bias, or a pattern of decision-making that tends to show the influence of gender will suffice to sufficiently plead a cause of action under Title IX using the erroneous outcome theory. *See e.g.* Doe v. St. John's University, 2017 WL 4863066, at pg *3 (D. Minn. 10/26/2017); Doe v. Loh, 2018 WL 1535495, at pg *9 (D. Maryland 3/29/2018).

34.     Unlike Pierre v. University of Dayton, 2017 WL 1134510, (6th Cir. 3/15/2019), the Complaint in this case alleges specific facts that establish a causal connection between the flawed proceeding and gender animus.

35.     Unlike Doe v. St. John's University, the Complaint here alleges more than just a procedurally flawed proceeding led to an erroneous outcome.

36.     Unlike Doe v. Loh, the Complaint in this case alleges much more than just the University's support for the interests of victims of sexual violence to show the University was indifferent or hostile to the needs of male students.

37.     Unlike Doe v. College of Wooster, 243 F.Supp.3d 878, at pg 888 (N.D. Ohio 3/17/2017) ("Ohio treats the relationship between a university and its students as contractual in nature"), the Complaint in this case alleges Defendant adopted a practice of railroading students accused of sexual assault in part due to the 2011 Dear Colleague

Letter since it was aligned with feminist beliefs, then Defendant decided not to adopt the suggestions in the 2017 Dear Colleague Letter since they came from a different, and from an apparently more male friendly federal government.

38.     The Complaint alleges facts which permit the Court to infer that Defendant intentionally discriminated against Plaintiff based on his sex.  Similar to the facts supporting the Second Circuit's decision in Doe v. Columbia University, 831 F.3d 46 (2nd Cir. 2016), the Complaint alleges that Defendant had been severely criticized in the student body and in the public press for its inability to protect its female students from sexual assault by male students.

39.     In addition to Doe v. Columbia University, Norris v. University of Colorado, 362 F.Supp.3d 1001 (D. Colorado 2/21/2019), Doe v. Marymount University, 297 F.Supp.3d 573 (E.D. Virginia 3/14/2018), and Wells v. Xavier Univ., 7 F.Supp.3d 746 (S.D. Ohio 2014), at least 40 other cases[6] provide additional examples where the court found plaintiff had sufficiently alleged Title IX claims so as to withstand dismissal.

40.     The Complaint alleges that the training materials provided to the Title IX Panel members caused them to assume Jane Doe was truthful in her claim of sexual assault and doubt Plaintiff's claim of consent.  Discovery is required for Plaintiff to more fully explain how the training materials caused the Panel members decision to discriminate against Plaintiff based on his gender, but Plaintiff has certainly alleged enough facts to support a conclusion that discovery will reveal additional evidence that the erroneous outcome in this case was caused by gender discrimination.

---

[6] Which can be provided by Plaintiff's counsel upon a request by the Court for additional support to deny Defendant's Motion.

41.     As to Defendant's argument that John Doe failed to plead facts sufficient to support an erroneous outcome claim, assuming all the facts plead in the Complaint are true, the Court must assume the following when deciding this Motion: (a) USAIB Procedure did not afford Plaintiff due process within the meaning of the Fourteenth Amendment; (b) undue pressure was asserted by top University officials on its Title IX Office and/or the Panel members in order to ensure a conviction of Plaintiff in this case; (c) the panelists were all actually biased against Plaintiff since they were trained to believe he was guilty and then decided he was guilty when a witness confirmed that Plaintiff was the subject of the false Op-ed's published by the University's student newspaper; (d) the outcome was erroneous in part due to the University's failure to investigate Plaintiff's claims that female students were attempting to destroy his future by filing false allegations of sexual assault; and (e) the University could have provided Plaintiff with the same procedural safeguards it provides female students accused of conduct violations that may result in expulsion[7], but due to his gender (only men get accused of having sex with someone who is incapacitated by means of voluntary intoxication) the University decided to try him using USAIB Procedures.

42.     Defendant kicked Plaintiff off campus without conducting any investigation then permitted his accusers to publish details of their open and ongoing Title IX claims to 1000's of students, faculty members, University officials and local media outlets. Defendant was motivated in this instance to accept the female's accusation of sexual assault and reject the male's claim of consent, so as to show the student body and the public that the Defendant is serious about protecting female students from sexual assault.

---

[7] USCC hearings provide students with the right to cross, the right to a live hearing, the right to 7 decision makers, and get realistic appeal options.

43.     There is nothing implausible, conclusory, or unreasonable about the Complaint's suggested inference that in this case, based on all the negative press and the false information provided by John's Doe's accusers in Op-ed's, the panel adopted a biased stance in favor of the accusing female and against the defending male in order to avoid further criticisms that Defendant turned a blind eye to such assaults.

44.     The Complaint alleges that female students used bogus Title IX Complaints to get Plaintiff wrongfully kicked off campus, knowing Defendant's Title IX office would believe their claims of sexual assault, and protect them from Plaintiff's "retaliatory" claims, regardless of the truth.

45.     Due to his gender, Plaintiff's educational experience at Washington University ended with discriminatory intimidation, ridicule, and insult that was so sufficiently severe, pervasive, and objectively offensive that it deprived Plaintiff of access to educational opportunities (law school) and the benefits provided by his school.

46.     Although Plaintiff was the victim of female student's false claims of sexual assault, Defendant's anti-retaliation policy warned Plaintiff that he would be punished for engaging in any behavior because of a person's participation in the reporting or investigation of an allegation of discrimination or harassment, which would include filing a Title IX Complaint based on a female student's filing of a false Title IX complaint.

47.     Plaintiff has alleged that similarly situated female students were encouraged to file complaints alleging Plaintiff violated the University's Student Code of Conduct while Plaintiff was dissuaded from filing a complaint.   Unlike the situation in Stenzel v. Peterson, 2017 WL 4081897, at *6 (D. Minn. 9/13/2017), in this case, Plaintiff has

alleged specific facts to indicate Plaintiff was treated differently during the process because of his gender.

48.     Defendant failed to remove or redact false information published by its student newspaper regarding the accusations against Plaintiff.  These articles subjected Plaintiff to discriminatory intimidation, ridicule and insult based on his gender, prevented Plaintiff from receiving an impartial decision and caused his final semester at college to be permeated with discrimination.   Clearly Defendant had the power to control students from publishing false Op-ed's in a Washington University student newspaper that would affect a male student's right to basic fairness at a Title IX hearing.

49.     Defendant's USAIB Procedures confer benefits to female students and punish male students without any due process protections.  At Washington University, only male students get accused of sexual assault, only male students get prosecuted using USAIB Procedures, and only male students get expelled without first being given a hearing and an opportunity to cross examine adverse witnesses.  While USAIB procedures say they apply to male and female students equally, only men get forced before an intentionally biased panel.

50.     The decision to adopt the procedures that weakened due process rights of men accused of sexual assault, then its failure to change procedures after the 2017 Dear Colleague Letter, when considered together will all the other evidence of gender bias in this case, creates an inference that the University was deliberately indifferent to gender bias inherent in its disciplinary hearing procedure and this deliberate indifference proximately caused the erroneous outcome.

51.     The Complaint sufficiently states facts that permit an inference that the University conducted the hearing in discriminatory manner that favored the female over the male student, and together with all other evidence of gender bias, the Complaint has alleged sufficient facts to support an Erroneous Outcome claim.

52.     When all the factual allegations suggesting gender bias are considered together, the Complaint pleads facts that cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding and has plead facts that show a causal connection between the flawed outcome and gender bias.

**(B)     *Plaintiff's Deliberate Indifference/Selective Enforcement (Count 4) Claim Must Stand***

53.     "To sufficiently state a deliberate-indifference claim under Title IX, Plaintiff must allege that a University official who had authority to institute corrective measures had actual notice of, and was deliberately indifferent to, the misconduct of which Plaintiff complains." Doe v. St. John's, at *4 (2017).

54.     "To support a claim of selective enforcement, a plaintiff must demonstrate that a female was in circumstances sufficiently similar to his own and was treated more favorably by the educational institute." Doe v. Princeton, 2018 WL 2396685 at pg *5 (D. New Jersey 2/06/2018).

55.     As to the theory of selective enforcement, Plaintiff has alleged that he notified the University of bullying and harassment by a similarly situated fellow Senior female student.  Although the University was in a position to prevent female students from depriving Plaintiff of his education and future based on his gender, the University failed to investigate his complaints against the female students, failed to notify the Title IX Office of the allegations Plaintiff made against female students, then let the female

students graduate, despite their ongoing Title IX investigations and plaintiff's claims of sexual harassment that should have prevented the University from releasing their transcripts pending a review of the claims to ensure they were made in good faith.

56.     Plaintiff has alleged facts that prove he informed University agents, that could have prevent his wrongful expulsion, about a physical assault orchestrated by a similarly situated female student.  The University failed to investigate his claims against that female student and told him that he would not be allowed on campus (where he would have to go to file a Title IX Complaint).

57.     Plaintiff alleged he informed the University that females had filed Title IX Complaints against him in bad faith, but the University failed to investigate or prosecute these similarly situated female students, then told Plaintiff he would be punished (University's anti-retaliation policy) if he continued to speak about his alleged conspiracy by female students to ruin his future by filling false Title IX Complaints.

58.     The Complaint alleges specific facts to permit the Court to draw an inference that the University was deliberately indifferent to acts of student-on-student harassment when the victim was a male.

59.     The Complaint alleges specific facts to permit the Court to draw an inference that the University decided not to investigate Plaintiff's claims that female students filed false Title IX Complaints against him in bad faith, at least in part, because he was a male student.

60.     Instead of investigating the merit of his claims against females, the University decided Plaintiff was guilty without conducting any investigation into the merit of his, or

the female students' claims; the Court must assume this presumption of guilt was, at least

in part, based on gender bias.

### III.    IF THE UNIVERSITY CONDUCT CODES DO NOT CREATE A CONTRACTUAL RELATIONSHIP BETWEEN THE PARTIES, THEN PLAINTIFF'S EXPULSION MUST BE DECLARED VOID

61.    Defendant argues the University's Student Conduct Code and USAIB Procedures

are not enforceable contracts.  Defendant should therefore be deemed to have waived the

argument that it had the right to prosecute Plaintiff for sexual assault then expel him

using the same unenforceable contracts as the basis for its power to do so.

62.    Defendant took Plaintiff's tuition money and Plaintiff performed the hard work

necessary to complete all academic course credits required for other similarly situated

students to receive a degree from Washington University.  Defendant's Motion does not

dispute that Plaintiff has met all the academic requirements for a diploma/degree.

63.    Unlike Rice v. West End Motors, Co., 905 S.W.2d 541 (Missouri App. E.D.

1995), cited on page 25 of the Motion, Plaintiff's tuition checks were cashed and his

funds have not been returned.

64.    Defendant's USAIB Procedure appears to be an unconscionable adhesion

contract, as it appears to be "a form contract created and imposed by a stronger party

upon a weaker party on a take this or nothing basis, the terms of which unexpectedly or

unconscionably limit the obligations of the drafting party."  Park Irmat Drug Corp., v.

Express Scripts Holding Company, 911 F.3d 505, at pg 513 (Mo. Ct. Ap. 2013).

65.    Unlike in the at-will employment context where the employer is imposing policies

on workers for their continued receipt of a paycheck, Plaintiff is paying Defendant for the

education and credits required to obtain a degree, and Defendant is imposing policies on

students.  Students who do not agree to the policies are forced to either lose their tuition money or lose their civil rights without receiving any consideration from the University.

66.     If Defendant would like to change its official position, then discovery will likely reveal whether Defendant actually gave Plaintiff any consideration as would be required to modify an existing employment contract between an at-will employee and his private employer.  *See e.g.* Doyle v. Holy Cross Hospital, 186 Ill.2d 104, 112-113 (N.D. Ill., March 29, 1999) (holding that after an employer is contractually bound to the provisions of an employee handbook, unilateral modification of its terms by the employer to an employee's disadvantage fails for lack of consideration).

67.     If Defendant did not have a legally enforceable right or power to withhold Plaintiff's degree based on his non-compliance with the USCC, then Plaintiff's conviction must be reversed and the Defendant ordered to vacate the conviction, release his transcripts, allow him to participate in a graduation ceremony (if he still desires to visit Washington University), and issue his degree/diploma so he can pursue his legal career.

68.     Although Missouri courts have not consistently found university conduct codes to be enforceable contracts, they have never found conduct codes could never be proved to represent the terms of a contractual relationship between a university and its student.

69.     Assuming Defendant would rather admit the USCC represents part of the contract between Plaintiff and Defendant than admit a wrongful expulsion, the Complaint sufficiently pleads facts to infer that Plaintiff continued to attend college at Washington University because he believed he would not lose his investment of time and money towards a Washington University degree absent a fair and just process to resolve any allegations of sexual assault.

70.     The USCC may say the Defendant can suspend a student if he is a danger to the campus (here there was no evidence Plaintiff was a danger to the campus), but the USCC is absent any language that would permit Defendant to withhold Plaintiff's degree after he had completed all of the credits required for similarly situated students to receive their degrees.

71.     Unlike the cases cited in Defendant's Motion, in this case, the Plaintiff had completed all of the credits required to receive his diploma and was still not issued a degree.  Defendant should have issued Plaintiff a degree once he completed the required credits and there is nothing in the USCC that would give Plaintiff notice that the University could withhold his degree, even after issuing a sanction of expulsion.

72.     Although Plaintiff was guaranteed a fair and just process to resolve any allegations of sexual assault, Defendant knew that its process was biased (against men and against students accused of sexual assault).  Subjecting Plaintiff to prosecution for a sexual assault claim using USAIB Procedures and training materials clearly breached Plaintiff's duty to provide Defendant with a fair (impartial) and just (based on reliable and sufficient evidence) process prior to wrongfully withholding his degree.

73.     Unlike the general policy statements in the university rules from Luccero v. Curators of University of Missouri, 400 S.W.3d 1, 4-5 (Mo. App. W.D. 2013), in this case, the University promised Plaintiff an "equitable investigation and resolution," which unlike "prompt," has consistently been found to be sufficiently definite to create an enforceable obligation of the University.  *See e.g.* Doe v. Brandeis University, 177 F.Supp.3d 561 (D. Mass., March 31 2016); *see also* Doe v. Amherst College, 238 F.Supp.3d 195 (D. Mass., February 28, 2017); Doe v. George Washington University,

305 F.Supp.3d 126 (D.D.C., April 25, 2018); <u>Doe v. Brown Univ.</u>, 210 F. Supp. 3d 310

(D.R.I. Sept. 28, 2016); <u>Doe v. Univ. of Notre Dame</u>, 2017 U.S. Dist. LEXIS 69645

(N.D. Ind. May 8, 2017); <u>Doe v. Case Western Reserve Univ.</u>, 2017 U.S. Dist. LEXIS

142002 (N.D. Ohio Sept. 1, 2017); <u>Doe v. Rollins Coll.,</u> 2019 U.S. Dist. LEXIS 7437

(M.D. Fla. Jan. 16, 2019); <u>Doe v. Trs. of Boston Coll.</u>, 892 F.3d 67 (1st Cir. 2018);

<u>Montague v. Yale Univ.</u>, No. 3:16-cv-00885 (D. Conn. Mar. 29, 2019).

74.     "In Missouri, all contracts have an implied covenant of good faith and fair

dealing." <u>Luccro</u>, at pg. 9.  Defendant does not dispute the allegations that it breached its

implied covenant of good faith and fair dealing, it instead argues the USCC and USAIB

Procedures were not enforceable contracts.

75.     If the Court determines that a contractual relationship exists between the parties,

then the Complaint sufficiently pleads facts supporting Defendant's willful breach of its

implied covenant of good faith and fair dealing with respect to its decisions to wrongfully

withhold Plaintiff's degree, and with respect to its decision to prosecute Plaintiff using

biased USAIB Procedures that gave him little chance to prove his innocence, then no

chance to successfully appeal a wrongful conviction.

76.     Although the Defendant knew Plaintiff was found to be credible when he was

acquitted by a different group of Title IX panelists, the University withheld this

information from the Panel and allowed them to erroneously proceed with the belief that

Plaintiff was likely guilty of the other accusations they heard about during witness

interviews.

### IV.    CLAIMS FOR PROMISSORY ESTOPPEL AND UNJUST ENRICHMENT MUST STAND

77.    In the alternative to pleading a breach of contract claim, Plaintiff also plead causes of action for Promissory Estoppel (Count 7) and Unjust Enrichment (Count 8).

78.    Plaintiff is seeking his degree and a reversal of his wrongful conviction, so clearly he is willing to dismiss his claim for monetary damages under Count 7.

79.    Count 7 seeks reversal of the University's conviction in Jane Roe's case due to its failure to fulfill its promise to Plaintiff that he would not be expelled without first being provided with a fair and equitable procedure.

80.    None of the employment handbook cases cited by Defendant compare to the facts of this case.  Promissory estoppel may not be a valid claim in the employment context when plaintiffs cannot establish an employment contract in the first place, but promissory estoppel is certainly a valid cause of action against Defendant in this case.

81.    It would be unjust for the University to retain all of plaintiff's tuition then deny him his diploma/degree after he completes enough credits for female students to obtain a degree.  Washington University would like the Court to believe that students merely go there for the education, not for education *and* a diploma, only the latter of which is required for students to pursue graduate school and job opportunities.

82.    If the Court finds there is no contractual term between the parties regarding Plaintiff's right to his degree, the Court should infer an implied contract between the parties whereby the University agreed to furnish Plaintiff with a Washington University degree upon Plaintiff paying the required tuition and completing the required academic course credits.

83.     Exhibit A attached to Defendant's Motion should be ignored by this Court since the relevant facts of that case have not been disclosed and since federal courts are not bound to follow state court decisions.  (CITATION).  Exhibit A involves a defamation case, does not involve a student getting expelled following an unfair Title IX hearing, and Defendant fails to attach the relevant facts of that case along with the relevant contracts or student codes at issue in that case.

84.     In the event this Court dismisses any causes of action, then Plaintiff desires to file an amended complaint adding common law claims for conversion, and negligence.  *See e.g.* Doe v. University of St. Thomas, 240 F.Supp.3d 984 (D. Minn. 2017); Rollins v. Cardinal Stritch University, 626 N.W.2d 464 (Minn. App. 5/29/2001); Abbariao v. Hamline University School of Law, 258 N.W.2d 108 (Minn. 8/26/1977).

85.     As the country learned from the Duke lacrosse case and the 2014 University of Virginia gang rape hoax, public media outlets are quick to cover stories that play into existing bias in our society, and in cases such as this, the Courts must be most critical about the process afforded to the accused.


        WHEREFORE, Plaintiff respectfully requests that this Honorable Court deny Defendant's Motion in its entirety, or in the alternative, and only if necessary to survive dismissal, Plaintiff requests leave to file an amended complaint within fourteen days and for such other relief as the Court deems fair and just including but not limited to an order declaring Plaintiff's conviction by Defendant must be reversed and his degree must be issued.

Respectfully submitted,


BY:   John G. Covert – 6285969IL
       One of his attorneys

JOHN GALT COVERT
U.S. District Court for the Eastern District of Missouri - Bar #6285969IL
The Llorens Law Group, Ltd.
20 N. Clark St., 33rd Floor
Chicago, Illinois 60602
(312) 602-2747
j.covert@llorenslawgroup.com