UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

_____

)
JOHN DOE,                                                     )
)
        Plaintiff,                                        )
)     Case No.: 4:19-cv-00300-JMB
        v.                                                      )
)
WASHINGTON UNIVERSITY,                        )
)
        Defendant.                                     )
)
_____)

## MEMORANDUM OF PLAINTIFF IN RESPONSE TO DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

Plaintiff, JOHN DOE, by and through his undersigned attorneys, files this Memorandum in Response to Defendant's Motion Pursuant to Fed.R.Civ.P. 12(b)(6) to Dismiss the Amended Complaint, and in support of denying the Motion in its entirety, Plaintiff states as follows:

Plaintiff is not asking the Court for a *de novo* review of the evidence; he is merely asking for a rational review of the evidence in a case where the evidence substantially favored him.  Defendant is very aware that Plaintiff is challenging the Panel's decision based on its failure to apply the applicable preponderance of evidence standard. However, Defendant's Motion fails to rebut Plaintiff's allegation that there was no evidence of sexual assault and only evidence of consent.  After a thorough review of all the evidence presented to the Panel, and in an attempt to justify the Panel's findings that (1) Jane Roe became incapacitated after drinking 1-2 weak tasting drinks, and (2)

Plaintiff should have known Jane was incapacitated when she was speaking and acting in a totally consensual manner, Defendant's attorneys can only cite (a) irrelevant evidence found in Plaintiff's written appeal[1], along with (b) Plaintiff's admittedly sarcastic comment that Jane's drink contained an absurd amount of alcohol.

This is a case where a Senior with a 3.8 cumulative GPA reasonably believed that he and had a consensual encounter with a female student that contacted him on Tinder, expressed her desire for Plaintiff to help her get over her ex-boyfriend, and then arranged to come over to Plaintiff's house at 11:00 p.m. on a Friday for help getting over, and for help getting even with her ex (for breaking her heart).  Plaintiff provided a detailed description of his entire evening with Jane, Jane claimed she was blacked out, but never unconscious, so this was not a he said/she said case...he was the only one who provided testimony regarding the details of their sexual encounters.   Plaintiff proved that Jane initiated and asked for him to do everything they did that night, he provided credible evidence they had deep and meaningful conversations throughout the entire occurrence, and when she left the next day, Jane thanked Plaintiff for a good time, kissed him goodbye, then her initial text messages *(res gestae)* to friends labeled the incident "totally consensual."  Unlike *Doe v. Colgate Univ.*, 2019 WL 190515 (2nd Cir. 2019), this is a case where the evidence substantially favored Plaintiff's version of events, but the Panel chose to accept Jane's unsupported accusatory version instead.

Despite the overwhelming evidence in his favor, due to pressure from students[2], local media[3] and alumni to convict Plaintiff, Defendant decided to investigate and

---

[1] *See* <u>Defendant's Motion to Dismiss</u>, page 6, footnote 6, which was not evidence considered by the Panel.
[2] In Jane's Op-ed: Three weeks later, Jane wrote "He was the subject of the Student Life article "Not a Threat," and I am the freshman that he raped.  Washington University failed.  They failed to protect its students, and my rape is a direct consequence...He has had too many cases of physical and sexual assault

prosecute Plaintiff using biased USAIB Procedures and selected inherently biased Panel members or trained them to be biased.  As intended by Defendant, and due to the biased belief that women do not want to have meaningless sex, the Panel members ignored all evidence of consent, failed to believe Plaintiff's sole description of what actually happened that night, and speculated that Plaintiff should have known Jane was blacked out when she was asking Plaintiff to do all they did together that night.

After gender bias caused Plaintiff's wrongful conviction, Provost Thorp summarily denied Plaintiff's compelling appeal that described why the Panel's fact findings evidenced actual bias and proved the Panel failed to apply the preponderance of evidence standard.  Despite overwhelming evidence that Jane consented to sex, Defendant decided to take away a degree that costs roughly $300,000 plus years of hard work without even giving John a hearing, let alone a hearing that satisfied due process[4].

Contrary to Defendant's argument that "if Doe's allegations are sufficient to state a claim, then any student unhappy with an adverse disciplinary result would be able to

---

brought against him.  He is not a good person, and his track record shows that he is fully aware of his actions.  Yet, prior to my rape he had never faced any consequences, and **he continues to pose a danger to women...the University's inaction and failure to adequately respond to previous reports about this individual make them complicit in my rape**.  I want my anguish and anger to translate into action and justice."  The same day Jane read this statement to 1000's of students, faculty and staff at the Title IX protest, Jane also authorized a local newspaper to use her image with a poster calling for Plaintiff's expulsion in local media reports about Defendant's perceived failure to protect women from violent male students.

[3] The same day Jane read this statement to 1000's of students, faculty and staff at the Title IX protest, Jane authorized a local newspaper to use her image holding a poster calling for Plaintiff's expulsion in its local newspaper reports about Defendant's perceived failure to protect women from violent male students.  Local newspaper articles reporting about the protest stated that some of the calls for action included "[W]e need to fire Jessica Kennedy," Defendant's Title IX Director.  Clearly a jury could conclude that Jessica Kennedy knew she would likely be fired unless she trained and selected panel members in a manner that would almost certainly result in the necessary 2 out of 3 Panel votes required to convict Plaintiff in this case.

[4] In Board of Curators of University of Missouri v. Horwitz, 435 U.S. 78 (1978), on page 87, the Supreme Court "recognized that there are distinct differences between decisions to suspend or dismiss a student for disciplinary purposes and similar actions taken for academic reasons," and indicated that a disciplinary hearing is required to satisfy due process prior to depriving a student of a protected property or liberty interest.

compel a court to reweigh the evidence," if the Amended Complaint (437 paragraphs of factual allegations including 29 Exhibits) gets dismissed, then no student in Missouri could ever successfully reverse an erroneous conviction of sexual assault by a private college or university.  Additionally, only innocent students that cast sufficient doubt on the accuracy of their conviction can proceed to the second step of proving an erroneous outcome Title IX claim.  Private colleges are currently allowed to use more fair, less fair, or totally unfair Title IX procedures, but Title IX still applies to private colleges.

If Defendant's Motion succeeds, the Court will be condoning the conduct of the worst university in America for due process, effectively ruling that private colleges and universities may legally expel an innocent student then take away his hard earned degree, regardless of the evidence, or the procedure, if any, used to adjudicate the claims.  If the Court accepts Defendant's arguments, college students will have less rights than at-will employees, and private universities may as well just start expelling male students upon receiving accusations of sexual assault rather than hold unfair hearings that expose them to federal lawsuits.

Defendant correctly states that Fed.R.Civ.P. 8(a)(2) only requires a short and plain statement of the claims in order to state a claim for relief, then most of Defendant's Motion argues the 88 page Amended Complaint fails to allege sufficient facts to support Plaintiff's conclusory allegations.  According to the heightened pleading standard advocated for by Defendant, a claim is plausible on its face "when the plaintiff pleads factual content that enables the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S.A. 662, 678 (2009).  Just like in many other recent Title IX lawsuits, Plaintiff has sufficiently plead facts that

enable the Court to infer Defendant is liable under all counts.  *See, e.g.*, *Doe v. Marymount Univ.*, 297 F.Supp.3d 573 (E.D. Virginia, Mar. 14, 2018); *Norris v. Univ. of Colorado, Boulder*, 362 F.Supp.3d 1001 (D. Colo., Feb. 21, 2019); *Doe v. Purdue Univ.*, 2019 WL 2707502 (7th Cir. 2019); *Doe v. Grinnell College*, 4:17-cv-00079, Ruling on Defendant's Motion for Summary Judgment, Filed July 9, 2019 (S.D. Iowa Central Division); *Doe v. Quinnipiac Univ.*, 3:17-cv-00364, Ruling on Defendant's Motion for Summary Judgment, Filed July 10, 2019 (D. Conn.).

For purposes of deciding this Motion, the Court must assume all well pleaded facts (including circumstantial evidence) as true and may not dismiss a complaint merely because it appears unlikely or improbable that a plaintiff can prove the facts alleged or ultimately prevail on the merits.  Instead, the Court must draw all reasonable inferences in favor of the Plaintiff, must consider all direct and circumstantial evidence, and must ask whether the facts alleged raise a reasonable expectation that discovery will reveal evidence of the necessary elements.

As to the allegations plead on information and belief, Plaintiff does not have an endowment of millions to compile and generate all relevant evidence without discovery, but once discovery is complete, Plaintiff will better understand the strengths of his case.

I.   CONSTITUTIONAL CLAIMS MUST STAND BECAUSE DEFENDANT IS PERFORMING A PUBLIC FUNCTION AND OPERATING UNDER THE COLOR OF STATE LAW

Since Defendant's second Motion to Dismiss only disputes Defendant's status as a state actor, Plaintiff's Response assumes Defendant is conceding that it deprived Plaintiff of a protected property and liberty interest without first affording him due process.

For a § 1983 claim to prevail, a plaintiff must establish that defendants deprived him of a right secured by the Constitution of laws of the United States, and the

defendants acted under color of state law. *See Blum v. Yaretsky*, 457 U.S. 991, 1002-03 (1982).

Unlike § 1983, "the scope of § 1985(3) is considerably broader and can reach conspiracies composed of federal officers or federal employees." *Federer v. Gephardt*, 363 F.3d 754, at pg. 758 (8th Cir. 2004). If necessary to survive dismissal with prejudice, Plaintiff respectfully requests leave to file a second amended complaint so that he can add the Office of Civil Rights as a co-conspirator for encouraging Defendant to prosecute all accusations of sexual assault where the accuser claims to have been unable to legally consent due to incapacitation caused by voluntary consumption of alcohol.

When a plaintiff brings a § 1983 claim against a defendant who is not employed by the government, the plaintiff must show that the individual or entity acted under the color of law. *42 U.S.C. §1983*. The Supreme Court has set forth several tests for courts to employ in evaluating the range of circumstances that might constitute state action. *Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n*, 531 U.S. 288, 295 (2001).

As to Plaintiff's Constitutional Claims, the Amended Complaint alleges Defendant was acting under the color of state and federal law, performing traditionally public functions, while being encouraged, either overtly or covertly, by police, prosecutors and/or politicians when it decided to prosecute Plaintiff using policies, procedures, biased Panel members and training materials that it knew would likely deprive Plaintiff of a fair hearing and an impartial decision. The Amended Complaint alleges sufficient facts that allow the Court to conclude there is an ongoing understanding and covert conspiracy between Defendant and local police and/or prosecutors whereby

they encouraged Defendant to brand Plaintiff a sexual assailant. In this case, police and prosecutors knew a criminal conviction would be highly unlikely.

Additionally, Plaintiff admits that government inaction cannot generally transform a private university into a state actor, but in this case, there is evidence that Defendant did all it could[5] to prevent Missouri politicians from passing SB 259, which would have subjected Defendant to civil fines and criminal penalties for exactly what it did to Plaintiff in this case.  None of the cases cited by Defendant in opposition to characterizing Defendant as a state actor considered the public function argument nor did they contain similar facts that could lead a reasonable jury to conclude that Defendant's actions caused SB 259 to fail in order to prevent mandatory changes to its discriminatory Title IX hearings.

Defendant must be held liable for its decision to prosecute a consensual sexual encounter as if it was sexual assault just like any local state's attorney or judge would be liable if he/she decided to convict Plaintiff in a proceeding without rules of evidence, without sworn testimony, without the right to make objections, and without a hearing where Plaintiff could listen to adverse witness testimony.

Traditionally, the decision to investigate, decision to formally charge, and decision to commence a prosecution following accusations of a sexual assault were functions within the exclusive prerogative of the State.  *See, e.g., Scott v. Northwestern Univ. School of Law*, 1999 WL 134059 (N.D. Ill., March 8, 1999); *see also Jackson v.*

---

[5] First Defendant tried to argue the merits of its USAIB Procedures in opposition to the proposed laws. Defendant's merit based arguments appeared to fail and local politicians seemed to be seriously considering passing the proposed laws that would highly regulate Title IX hearings.  According to local media reports, just before the laws were up for a vote, somebody with knowledge of Defendant's Title IX investigations conveniently leaked the name of a student Defendant convicted for sexual assault, which caused the proposed laws to fail based on speculation that the proposed changes were intended to allow this student's parent to reverse his conviction.

*Metropolitan Edison Co.*, 419 U.S. 345, at 353 (1974); *Baker v. Kohn*, 457 U.S. 830, at 842 (1982).

In *Scott*, the court concluded that Northwestern University's private police force can act under the color of state law for purposes of §1983. In reaching this holding, the court reasoned that "[T]o permit the state to delegate its police powers to Northwestern University and then shield the Northwestern police force from liability when, in exercising these powers, it violates the rights of students, employees, and visitors would pervert the language and intent of § 1983." *Id.*, pg *6.

In a case like this where police and prosecutors decide to let Defendant exclusively handle the investigation and prosecution of a sexual assault allegation, Defendant is performing a public function, and should be held accountable under § 1983 and §1985(3) for its decision to prosecute Plaintiff using a procedure that it knew would not satisfy due process. Defendant has police and prosecutorial powers and is now asking the Court to shield it from liability when, in wrongfully exercising these powers, it violated the rights of Plaintiff. Defendant must be held accountable for its illegal exercise of police and prosecutorial discretion.

Based on the unique facts of this case, prior case law is undecided on the issues of (a) whether Defendant should be held to be a state actor based on the facts and legal theories alleged in this case, and (b) whether §1985(3) applies to a private university performing the traditionally public function of branding someone a sex offender, while acting under the color of federal and state law, and while being encouraged by state politicians and local police and prosecutors to conduct disciplinary hearings involving

questionable sexual assault claims in a manner that increases convictions, but deprives male students of free speech, property and liberty without due process.

State colleges and universities must ensure their Title IX hearings satisfy the Fourteenth Amendment's due process requirements before they brand students as rapists, so why should anything less be expected from private colleges and universities conducting Title IX hearings required for their continued receipt of federal funding.

**II.    G<small>ENDER</small> B<small>IAS</small> S<small>UFFICIENTLY</small> A<small>LLEGED</small> - A<small>LL</small> T<small>ITLE</small> IX C<small>LAIMS</small> M<small>UST</small> S<small>TAND</small>**

Unlike any of the Title IX cases cited by Defendant, the Amended Complaint and Exhibits provide compelling evidence that gender bias was a motivating, if not the only factor that caused the erroneous outcome in this case.  The Amended Complaint provides sufficient facts to support a conclusion that public pressure from students, alumni[6], local media, administrators and/or the Office of Civil Rights caused Defendant to sacrifice the future of an innocent student in order to prevent further backlash from female students and additional negative PR from local media.

Rather than correct any assumptions developed when Panel members read the false Op-ed's, and/or listened or read about Plaintiff's accusers' statements at the Title IX protest (incited by the false, misleading and defamatory Op-ed titled "Not a Threat"), Defendant chose not to correct mistaken beliefs that Plaintiff had assaulted multiple women since this theory conformed to the Defendant's gender based assumption that serial male offenders commit sexual assaults and women almost never falsely report sexual assault.  Plaintiff also alleges the Defendant's Title IX training materials caused

---

[6] See EXHIBIT 21 - page 7, a concerned alum voices her concern that a male student has been allowed to remain on campus for years after the University allegedly first received complaints against Plaintiff.

further bias against Plaintiff.[7]  Defendant knew the Panel heard about the other accusations made against Plaintiff, knew he had been acquitted on all the other sexual and physical assault charges, but decided to withhold evidence of these exonerations from the Panel members since it would not support their intended result; a conviction of Plaintiff on Jane Roe's claim.

None of the Defendant's cited cases foreclosed on the possibility of using the types of evidence the Amended Complaint alleges in support of an inference that gender bias affected the erroneous outcome.  Defendant's Motion tends to cite cases where prior Courts allowed discovery then ruled against the plaintiffs on summary judgment motions. However, most recent federal decisions prove it would be an abuse of discretion for this Honorable Court to dismiss Plaintiff's Title IX claims.

When all the allegations are accepted as true, giving the averments a liberal construction, and making those reasonable inferences fairly deductible from the facts stated, this case has alleged specific facts to support an inference that Washington University discriminated against Plaintiff, based at least in part, on his gender, creating a plausible inference that the proceedings were influenced by gender bias.

Defendant correctly cites *Doe v. Saint Paul Conservatory for the Performing Arts*, 2018 WL 2431849, at pg *3 (D. Minn. 5/30/2018) (where the student admitted to allegations of sexual harassment) for the quotation that "[T]itle IX should be liberally construed to give school administrators...the flexibility they require to initiate a

---

[7] The training materials allegedly informed Panel members, among other subjects, that female students almost never falsely report sexual assault, that most sexual assaults on campus are committed by serial rapists, and that little weight should be placed on female student's initial statements about an encounter being consensual. *See* page 8 of the Panel's decision (EXHIBIT 13) for evidence lacking in *Doe v. Grinnell College*, but present in this case, regarding the proximate cause link between the biased training materials and the erroneous outcome.

reasonable disciplinary response."  Washington University is not in the business of prosecuting sexual assault claims, so this case falls outside of Defendant's area of expertise and judicial supervision is required to ensure fundamental fairness.

Colleges are allowed to be flexible with their internal procedures, but no federal or state court decision has stated that school administrators should use that flexibility to deprive civil rights of accused students, then shield themselves from liability to lawsuits, and avoid public disclosure from judicial review actions, based on a completely one-sided and unfair administrative procedure.

**(A)    Erroneous Outcome (Count 4) and Hostile Environment (Count 2 Theory Title IX Claims Must Stand**

As to the first prong, assuming the allegations in the Amended Complaint are true, Plaintiff proffers enough facts that cast doubt on the accuracy of the outcome of his disciplinary process.  Plaintiff has alleged the Panel's decision and denial of his Appeal was not impartial as evidenced by the wrongful determinations of responsibility, and the Provost's wrongful denial of his appeal.

While the specific cause of each Panel members bias against Plaintiff may still up for debate, the Panel members determinations that Jane Roe was incapacitated and that Plaintiff should have known she was unable to consent were not based on the evidence, were arbitrary, and were clearly the product of actual bias against Plaintiff because he was a male student accused of multiple physical and sexual assaults on female students.[8]

---

[8] In this case, the Panel members were either biased against men due to (a) the inflammatory information describing Plaintiff as a serial rapist from the false Op-ed's and Title IX protest, (b) pressure asserted on the Panel and Title IX Director from key administrators such Lori White, Holden Thorp and Chancellor Wrighton to convict Plaintiff rather than feel the public's backlash from his acquittal, (c) Lori White's Op-ed in which she mandates support for Plaintiff's female accusers, (d) **pre-existing gendered assumptions** (*e.g.*, (i) women do not desire, like, want or pursue sex, (ii) women would not consent to meaningless sex, (iii) women are incapable of asserting themselves in sexual situations with men, (iv) women do not consent to sex while not on birth control, (v) college women lack the mental capacity required to legally consent to

11

Plaintiff has alleged specific facts proving gender bias caused his conviction, including but not limited to the following: (1) patters of decision making by the University and its Title IX Panel[9] including its decisions to resolve all facts against Plaintiff by ignoring/excluding all evidence that failed to conform to gender based assumptions about male and female roles in heterosexual relationships; (2) patters of decision-making, including Defendant's decision to ignore the 2017 Dear Colleague Letter and its public opposition to local and federal efforts to ensure students accused of sexual assault receive due process; (3) false public statements by Plaintiff's accusers and conclusory statements by pertinent University officials that prejudiced Plaintiff's right to an impartial decision; (4) public comments by University administrators calling for students and faculty to stand with Plaintiff's accusers; (5) external pressures from students, local media, and the federal government to better protect its female students; (6) selective enforcement of the conduct code against Plaintiff but not against similarly situated female students who fabricated physical and sexual assault claims against him; and (7) deliberate indifference to Plaintiff's claims that he was innocent and female students were conspiring to destroy his future by false Op-ed's[10] and bad faith claims.

Since the determinations of responsibility were the basis of Defendant's decision to dismiss Plaintiff, evidence that the Panel's determinations, or the appellate review of those determinations, was not impartial is of heightened significance.

---

sex while intoxicated, (vi) men only think with their di\*\*\*), and/or (e) due to gendered assumptions developed by the Panel members as a result of Defendant's Title IX training.
[9] Including the Panel's decisions to ignore all evidence that failed to conform to their chauvinistic beliefs that men cannot control their sexual impulses and that women do not want or pursue meaningless sex.
[10] See EXHIBIT 21 - pages 5-6, a concerned attorney with a nephew at Washington University puts the Defendant on notice of the probable conspiracy hatched by "Not a Threat," since "IT MAKES NO SENSE!"

12

### 1. Determinations of Responsibility in Jane Roe v. John Doe

None of the Panel's determinations of responsibility were supported by the evidence presented to the Panel. The Panel decided all facts in favor of Jane and ignored all evidence in favor of John based on the Defendant's and the Panel member's outdated and discriminatory views of gender and sexuality. The determinations in this case can only be explained by the Panel's gendered assumption that Jane would not consent to sex she felt was meaningless.  As in the cases of Grinnell *College* and *Quinnipiac Univ.*, in this case, the Panel's determinations ignored all evidence that failed to conform to the Defendant's chauvinistic attitude.  *See Grinnell College*, July 9, 2019 Order at pages 23-26, and *Quinnipiac Univ.*, July 10, 2019 Order at pages 23, 25.

Unlike *Rossley v. Drake*, 342 F.Supp.3d 904 (S.D. Iowa 2018) (multiple witnesses testified they saw accuser drink enough to become incapacitated, then upon withdrawing consent, the accuser ran home), unlike *Doe v. Colgate Univ.*, 2019 WL 1904515 (2nd Cir. Jan. 15, 2019) (3 female accusers said Doe touched them without consent, Doe denied all 3 accusations of groping), and unlike *Doe v. George Washington Univ.*, 305 F.Supp.3d 126 (D.D.C. 2018) (female had 10+ drinks in a short time span, her friends confirmed she sounded severely intoxicated just before the assault, she eventually said "no, stop," which was ignored by the guy, and she stumbled home just after the alleged assault), in this case, there was no evidence Jane was incapacitated, there was no evidence she ever withdrew consent, and Plaintiff even admitted to a second sexual encounter that Jane could not recall.  There was no credibility dispute for the Panel to resolve in this case, yet they chose to believe Jane's unbelievable claims that she was not that type of girl, that she just wanted plaintiff's emotional support (although she left her

girlfriends to go see Plaintiff), and that she was not telling her friends the truth when she initially told them her encounter with Plaintiff was totally consensual.

Plaintiff's appeal, attached to the Amended Complaint as EXHIBIT 15, provides sufficient proof to prove the determinations of responsibility can only be explained by the Panel members bias against men...they were not capable of believing that a female would pursue and initiate apparently meaningless sex with someone she barely knew.

Plaintiff provided a detailed account of his entire evening with Jane, including very specific descriptions of how Jane verbally and physically initiated both of their sexual encounters that night. Plaintiff testified to statements and actions by Jane that proved he received consent for every sexual act that night. Plaintiff testified that Jane directed him on what she wanted throughout the encounter, she was always conscious, always verbal and never slurring her words throughout the occurrence. Jane did not recall what she was saying to John during sex, but she categorically denied saying everything that Plaintiff claimed she said that night, since, according to Plaintiff, those sexually explicit statements were completely out of character for this self-described shy and sexually reserved girl.

Jane's ex-boyfriend even confirmed Plaintiff's claim that Jane became more sexually aggressive and did in fact tell her ex-boyfriend exactly what she wanted during prior sexual encounters with him. *See* EXHIBIT **, Second Panel Interview of Witness *. "Nevertheless, the Panel unanimously believes that it is more likely than not that the Respondent should have been aware that the Complainant was incapacitated. Again, our conclusion is based on the totality of the evidence we reviewed." EXHIBIT 13 - Panel

14

Decision, page 9.  The quotation from Exhibit 13 above provides a perfect example of a conclusory allegation without any specific factual support.

Plaintiff has alleged he was expelled due to gender-based assumptions that prevented his Panel members from being fair and a jury could easily conclude this based on the evidence contained within the Amended Complaint and 29 Exhibits.

Why didn't the Panel believe anything Plaintiff told them about the evening with Jane, apart from believing his sarcastic comment about drink strength was serious... because the Panel believed drunk men only think with their di***, because they believed it was out of character for a female to initiate or desire meaningless sex, and because they believe intoxicated female students lack the mental capacity to decide who they want to sleep with when drunk.

Jane vomited one time after she and Plaintiff had sex the first time, and a couple of hours prior to their second sexual encounter.  The Panel members concluded this must have been due to drinking enough to cause incapacitation, conveniently omitting evidence provided by Jane that her consumption of controlled medications or failure to eat anything may have been contributing factors to her throwing up one time.  Had Jane thrown up due to too much alcohol, she would have thrown up more than once.

Regardless, the Panel's decision failed to identify when Jane was incapacitated throughout the evening and failed to identify whether she was mentally or physically incapacitated.  Was Plaintiff supposed to know Jane was incapacitated and unable to consent before she threw up?  Was he supposed to know she was incapacitated the second time they had sex which was 2 hours after she threw up and only after she expressed her love for Plaintiff, referenced a conversation they had earlier, and once

15

again told plaintiff she wanted him inside her?  Plaintiff provided the only account of what actually happened, yet due to gender biased beliefs, all 3 Panel members chose not to believe the truth.

Defendant would like the Court to believe that since Plaintiff beat the other 2 accusers' claims of physical and sexual assault, this proves Defendant was fair in all cases.  To the contrary, the 3 accusers claims were all factually different that Jane Roe's claim, they were all tried using different fact finders, different procedures, and did not support a pattern of misconduct inference.  Plaintiff produced a video[11] that got him acquitted on his ex-girlfriend's claims, but that does not mean he got a fair or impartial hearing in Jane's case.

The Panel members were provided with a text message in which Jane expresses doubt about Plaintiff being a bad guy.  Jane admits that she decides to file a Title IX claim because a co-conspirator lied to her about Defendant's prior knowledge of Plaintiff's predatory nature.  Nevertheless, the Panel ignores this physical evidence and determined Jane was not coerced into filing the complaint against Plaintiff[12].

### 2. Defendant's Cited Cases are Distinguishable

Comments by members of the university and its officials evidencing gender bias, or a pattern of decision-making that tends to show the influence of gender will suffice to sufficiently plead a cause of action under Title IX using the erroneous outcome theory.

---

[11] This video is referenced in the Amended Complaint and should be reviewed by the Court before deciding this motion to get a better idea of the reasons N.A.T. was false.  The video is attached hereto as **EXHIBIT 31** and has been filed under seal.

[12] Although the Panel did interview this co-conspirator and author of "Not a Threat," their investigation into the alleged conspiracy ended when this witness said she did not recall her first conversations with Jane and they never asked her any questions regarding the truth of the allegations mentioned in her public statements regarding the claims against Plaintiff.

*See e.g. Doe v. St. John's Univ.*, 2017 WL 4863066, at pg *3 (D. Minn. Oct. 26, 2017);
*Doe v. Loh*, 2018 WL 1535495, at pg *9 (D. Md. Mar. 29, 2018).

Unlike *Pierre v. Univ. of Dayton*, 2017 WL 1134510, (6th Cir., Mar. 15, 2019), the Complaint in this case alleges specific facts that establish a causal connection between the flawed proceeding and gender animus.

Unlike *Doe v. St. John's Univ.*, 2017 WL 4863066, (D. Minn. 10/26/2017), the Complaint here alleges more than just a procedurally flawed proceeding led to an erroneous outcome.

Unlike *Doe v. Loh*, the Complaint in this case alleges much more than just the University's support for the interests of victims of sexual violence to show the University was indifferent or hostile to the needs of male students.

Unlike *Doe v. College of Wooster*, 243 F.Supp.3d 878, at pg 888 (N.D. Ohio Mar. 17, 2017) which only addresses the 20111 Dear Colleague Letter, the Amended Complaint alleges Defendant adopted a practice of railroading students accused of sexual assault in part due to the 2011 Dear Colleague Letter since it was aligned with feminist beliefs, *then* Defendant decided not to adopt the suggestions in the 2017 Dear Colleague Letter since they came from an apparently more male friendly federal government.

The Amended Complaint alleges facts which permit the Court to infer that Defendant intentionally discriminated against Plaintiff based on his sex.  Similar to the facts supporting the Second Circuit's decision in *Doe v. Columbia Univ.*, 831 F.3d 46 (2nd Cir. 2016), the Complaint alleges that Defendant had been severely criticized in the student body and in the public press for its inability to protect its female students from sexual assault by male students.

In addition to *Doe v. Columbia*, at least 30 other cases[13] provide additional examples of cases like this where plaintiffs have sufficiently alleged Title IX claims so as to withstand dismissal, some examples include: *Doe v. Amherst College*, 238 F.Supp.3d 195 (D. Mass. 2017); *Doe v. Rhodes College*, 2:19-cv-02336, Order on Plaintiff's Request for a TRO, filed June 14, 2019 (W.D. Tenn.); *Doe v. Grinnell College*, 4:17-cv-00079, Order on Defendant's Motion for Summary Judgment, filed July 9, 2019 (S.D. Iowa); *Doe v. Quinnipiac Univ.*, 3:17-cv-364, Ruling on Defendant's Motion for Summary Judgment, filed July 10, 2019 (D. Conn.); *Fogel v. The Univ. of the Arts*, 18-5137, Memorandum on Defendant's Motion to Dismiss, filed Mar. 27, 2019 (E.D. Penn.); *Doe v. Syracuse*, 5:18-CV-377, Memorandum on Defendant's Motion to Dismiss, filed May 8, 2019 (N.D.N.Y.); *Doe v. Univ. of Denver,* 16-cv-00152, Order of Defendant's Motion for Summary Judgment, filed Mar. 13, 2018 (D. Colo); *Neal v. Colorado State Univ.-Pueblo*, 2017 WL 633045 (D. Colo.); *Norris v. Univ. of Colorado*, 362 F.Supp.3d 1001 (D. Colo. 2019); *Doe v. Marymount Univ.*, 297 F.Supp.3d 573 (E.D. Va. 2018); *Wells v. Xavier Univ.*, 7 F.Supp.3d 746 (S.D. Ohio 2014); and *Prasad v. Cornell*, 5:15-cv-322 (N.D.N.Y. Feb. 24, 2016).

The Complaint alleges that the training materials provided to the Title IX Panel members caused them to assume Jane Doe was truthful in her claim of sexual assault and doubt Plaintiff's claim of consent[14].  Discovery is required for Plaintiff to more fully explain how the training materials caused the Panel members decision to discriminate against Plaintiff based on his gender, but Plaintiff has certainly alleged enough facts to

---

[13] Which can be provided by Plaintiff's counsel upon a request by the Court for additional support to deny Defendant's Motion.
[14] *See* page 8 of the Panel's Decision (Exhibit 13) - example of why Plaintiff can prove proximate cause.

support a conclusion that discovery will reveal additional evidence that the erroneous outcome in this case was caused by gender discrimination.

Plaintiff has alleged the panelists were all biased against Plaintiff since they were trained to believe he was guilty and then decided he was guilty when a witness confirmed that Plaintiff was the subject of the false Op-ed's published by the University's student newspaper.  Plaintiff has alleged the outcome was erroneous in part due to the University's failure to investigate Plaintiff's claims that female students were attempting to destroy his future by filing false allegations of sexual assault.  Plaintiff has alleged the University could have provided him with the same procedural safeguards it provides female students accused of conduct violations that may result in expulsion[15], but due to his gender (only men get accused of having sex with someone who is incapacitated by means of voluntary intoxication) the University decided to try him using USAIB Procedures.

There is nothing implausible, conclusory, or unreasonable about the Complaint's suggested inference that in this case, based on all the negative press and the false information provided by John's Doe's accusers in Op-ed's, that the panel adopted a biased stance in favor of the accusing female and against the defending male in order to avoid further criticisms that Defendant turned a blind eye to such assaults.  Defendant was motivated in this instance to accept the female's accusation of sexual assault and reject the male's claim of consent, so as to show the student body and the public that the Defendant is serious about protecting female students from sexual assault.

---

[15] USCC hearings provide students with the right to cross, the right to a live hearing, the right to 7 decision makers, and get realistic appeal options.

19

As the country learned from the Duke lacrosse case and the 2014 University of Virginia gang rape hoax, public media outlets are quick to cover stories that play into existing bias in our society, and in cases such as this, the Courts must be most critical about the process afforded to the accused.

Defendant's USAIB Procedures confer benefits to female students and punish male students without any due process protections.  At Washington University, only male students get accused of sexual assault, only male students get prosecuted using USAIB Procedures, and only male students get expelled without first being given a hearing and an opportunity to cross examine adverse witnesses.  While USAIB procedures say they apply to male and female students equally, only men get accused of sexual assault via voluntary incapacitation claims, so only men get punished using the less fair procedures used by Defendant when deciding cases that could result in expulsion.

Plaintiff has alleged that similarly situated female students were encouraged to file complaints alleging Plaintiff violated the University's Student Code of Conduct while Plaintiff was dissuaded from filing a complaint.   Unlike the situation in *Stenzel v. Peterson*, 2017 WL 4081897, at *6 (D. Minn. 9/13/2017), in this case, Plaintiff has alleged specific facts to indicate Plaintiff was treated differently during the process because of his gender.

Plaintiff has also provided evidence that the Defendant conducted the hearing in a discriminatory manner in that Jane was permitted to provide a second response to the Investigator's report, while John was not.  Jane was asked leading questions during her interview and was never pressured into answering questions when she became angry.  John was repeatedly asked questions that tended to assume he was guilty (*e.g.*, Did you

20

expect she was going to have sex with you that night) and was ignored by the Panel even though he was the only witness with any memory of the events in question.  The Complaint sufficiently states facts that permit an inference that the University conducted the hearing in discriminatory manner that favored the female over the male student, and together with all other evidence of gender bias, including evidence of selective enforcement and deliberate indifference, the Complaint has alleged sufficient facts to support an Erroneous Outcome claim.

**(B)    Plaintiff's Deliberate Indifference/Selective Enforcement (Count 3) Claim Must Stand**

"To sufficiently state a deliberate-indifference claim under Title IX, Plaintiff must allege that a University official who had authority to institute corrective measures had actual notice of, and was deliberately indifferent to, the misconduct of which Plaintiff complains."  Doe v. St. John's, at *4 (2017).

Unlike *Doe v. Princeton*, 2018 WL 2396685 (D. N.J. Feb. 6, 2018) where Princeton actually investigated, charged and convicted a male student for making false statements that another man raped him, in this case, Washington University had notice that Plaintiff was claiming his accusers were lying.  Because Plaintiff was male and his accusers were female, Defendant decided not to investigate or charge his accusers with conduct violations based on their allegedly false claims of assault.

Contrary to Defendant's argument that Plaintiff has failed to identify any similarly situated female students, there is no requirement that Plaintiff must file a complaint with Defendant's Title IX Office in response to an alleged claim of misconduct. *See Doe v. Miami Univ.,* 882 F.3d 579 (6th Cir. 2018) ("The district court was incorrect  to  suggest that  John  needed  to  have  made  a  formal  complaint about Jane in order to plead a

21

deliberate-indifference claim.  We require only that 'the funding  recipient  had  actual knowledge  of  the  sexual  harassment," and  not  that  the  plaintiff  followed a formal procedure to put the funding recipient on notice'") (*citing  Patterson v. Hudson Area Schs.*, 551 F.3d at 445 (6th Cir. 2009)).

If Jane sued Defendant for causing her alleged assault, the allegations from "Not a Threat" provide perfect examples of deliberate indifference claims that should get dismissed.  Prior to April 2018, when the girls reported their claims, Defendant had never learned about allegations involving Plaintiff, so prior to April 2018, Defendant could not have been deliberately indifferent to such claims.

Defendant failed to remove or correct false information published by its student newspaper regarding the accusations against Plaintiff.  These articles subjected Plaintiff to discriminatory intimidation, ridicule and insult based on his gender, prevented Plaintiff from receiving an impartial decision and caused his final semester at college to be permeated with discrimination.   Clearly Defendant had the power to control *its students* from publishing false Op-ed's, or at least had the power to remove or redact them online, in a Washington University student newspaper that would affect a male student's right to basic fairness at a Title IX hearing.

Plaintiff alleged he informed Defendant that females had filed Title IX Complaints against him in bad faith, but Defendant failed to investigate or prosecute these similarly situated female students, then told Plaintiff he would be punished (Defendant's anti-retaliation policy) if he continued to speak about his alleged conspiracy by female students to ruin his future by filling false Title IX Complaints.

The Complaint alleges specific facts to permit the Court to draw an inference that the University was deliberately indifferent to acts of student-on-student harassment when the victim was a male.  Due to his gender, Plaintiff's educational experience at Washington University ended with discriminatory intimidation, ridicule, and insult that was so sufficiently severe, pervasive, and objectively offensive that it deprived Plaintiff of access to educational opportunities (law school) and the benefits provided by his school.

"To support a claim of selective enforcement, a plaintiff must demonstrate that a female was in circumstances sufficiently similar to his own and was treated more favorably by the educational institute."  *Doe v. Princeton*, 2018 WL 2396685 at pg *5.

As to the theory of selective enforcement, Plaintiff has alleged that he notified the University of bullying and harassment by a similarly situated fellow Senior female student.  Although the University was in a position to prevent female students from depriving Plaintiff of his education and future based on his gender, the University failed to investigate his complaints against the female students then let the female students graduate, despite ongoing Title IX investigations that should have prevented the University from releasing their transcripts pending a review of their claims to ensure they were made in good faith.

The Complaint alleges that female students used bogus Title IX Complaints to get Plaintiff wrongfully kicked off campus, knowing Defendant's Title IX office would believe their claims of sexual assault, and protect them from Plaintiff's "retaliatory" claims, regardless of the truth.

Plaintiff has alleged facts that prove he informed University agents about a physical assault on him orchestrated by a similarly situated female student.  Defendant failed to investigate his claims against that the similarly situated female student and let her graduate on time despite Plaintiff's substantiated allegations against her.

The Complaint alleges specific facts to permit the Court to draw an inference that the University decided not to investigate Plaintiff's claims against female students, at least in part, because he was a male complaining of sexual harassment by female students.

Instead of investigating the merit of his claims against females, the University decided Plaintiff was guilty without conducting any investigation into the merit of his, or the female students' claims; the Court must assume this presumption of guilt was, at least in part, based on gender bias.

## III.   IF THE UNIVERSITY CONDUCT CODES DO NOT CREATE A CONTRACTUAL RELATIONSHIP BETWEEN THE PARTIES, THEN PLAINTIFF'S EXPULSION MUST BE DECLARED VOID

Although Missouri has yet to recognize student codes as contracts, this case should be the first.   Defendant's course of conduct and partial performance in reliance on USAIB Procedures and University Student Code of Conduct establishes the parties had a valid legal contract; or, in the alternative, the Defendant had no right to refuse to give Plaintiff his degree, regardless of the findings by its Title IX Panel.

If this Honorable Court accepts Defendant's arguments that its Title IX procedure is too vague to be unenforceable by students, then it was clearly drafted by Defendant in a manner intended to deny students of *any* legally enforceable promises of fairness. USAIB Procedures constitute an unconscionable adhesion contract and the Court should

write in terms so as not to deny Plaintiff the benefits he bargained for when he paid his tuition and successfully completed the required credits.  Plaintiff believed Defendant was promising him a fair process and an impartial decision that was supported by a preponderance of the evidence, so the Court should modify the contracts between the parties to include a guarantee that Defendant promised to adjudicate Title IX claims against Plaintiff using due process that satisfied procedural due process.

According to the 8th Circuit in *Oglala Sioux Tribe v. Andrus*, 603 F.2d 707, 714 (8th Cir. 1979), "[t]he federal rules, and the decisions construing them, evince a belief that when a party has a valid claim, he should recover on it regardless of his counsel's failure to perceive the true basis of the claim at the pleading state, provided always that a late shift in the thrust of the case will not prejudice the other party in maintaining a defense upon the merits."

Like *Grinnell College*, Defendant argues Plaintiff has failed to plead specific deviations from the USAIB and USCC.  Regardless, Defendant has notice of Plaintiff's allegation that his disciplinary proceeding was unfair, and the decision was erroneous. Plaintiff's broad description of his contract claims in the Amended Complaint does not prejudice Defendant or prevent it from adequately defending this matter.  Plaintiff may eventually amend the breach of contract claim to match the evidence once discovery is complete, but in addition to the cited breaches in the Amended Complaint, based on a few recent case decisions cited herein, and in addition to proving a breach by Defendant's failure to apply a preponderance of evidence standard, Plaintiff appears to be able to also prove breach of contract claims based on Defendant's failure to abide by Title IX, and by its wrongful denial of Plaintiff's appeal.

Even when student codes expressly state that they do not constitute a contract, either express of implied, or are subject to change at the University's discretion, such language alone does not preclude a student's breach of contract claim.  In *Quinnipiac Univ.*, the District Court of Connecticut recently considered similar facts and concluded a fact finder must decide whether the student code and Title IX policy created an enforceable contract.  In *Quinnipiac*, on page 41 of the July 10, 2019 Order, the court quotes a prior decision on the issue of whether the student code can be a contract:

> The existence of an implied contract is a question of fact...Employee Handbooks can form an implied contract.  *Christensen v. Bic Corp.*, 18 Conn. App. 451, (1989).  Employee Handbooks can form an implied contract.  *Id.*  Here, it cannot be gainsaid that there was some sort of contractual agreement between QU and the plaintiff for QU to provide an education to the plaintiff and for the plaintiff to pay some amount of tuition to QU for that education.  *See Bass v. Miss Porter's School*, supra, 738 F. Supp. 2d at 320.  Therefore, the contours of that contract were informed to some degree by the Student Handbook and the Student Code of Conduct.  Indeed, QU's reliance upon the Student Handbook and the Student Code of Conduct as justification for its suspension of plaintiff is ample evidence of that.  Accordingly, QU cannot now deny the plaintiff's claims based upon the same sections of the Student Handbook.

Unlike the facts in *Nickel v. Stephens College*, 480 S.W.3d 390 (WD Appeals Court of Missouri 2015), where the student was not expelled pursuant to a certain provision of the relevant student code, in this case, Plaintiff was expelled pursuant to USCC and USAIB Procedures.  Absent the contract rights contained in the USCC and USAIB Procedures, Defendant's conviction of plaintiff and his subsequent expulsion would be void.

Defendant relies on the lack of case law in Missouri in support of its argument that Plaintiff has failed to plead a contract exist between the parties.  The fact that Missouri courts have not yet had a chance to decide a case like this simply means the law

26

is unsettled on Plaintiff's breach of contract claim.   Thus, it is within this Court's

discretion to permit the breach of contract claims to survive Defendant's Motion to

Dismiss.

In *Doe v. Trustees of Boston College*, 892 F.3d 67, at 88-89 (1st Cir. 2018), the

First Circuit stated "[W]e agree with the Does that the implied covenant of good faith and

fair dealings imposed on every contract by Massachusetts law, applied in the context of

school disciplinary proceedings, creates an independent duty to provide basic fairness.

*See Uno Rests., Inc. v. Bos. Kenmore Realty Corp.*, 441 Mass. 376, 805 N.E.2d 957, 964

(2004).

In *Cloud v. Trs. of Bos. Univ*., 720 F.2d 721, at 725 (1st Cir. 1983) (*citing*

Coveney, 388 Mass. 16, 445 N.E.2d 136, 139 (1983)) ("[W]hen a hearing is held, it must

be conducted fairly."), the First Circuit recognized that even where a student does not

have a contractual right to a disciplinary hearing, if a school does hold a hearing, the

school has a duty to conduct it with basic fairness.

On January 16, 2019, in the case of *Doe v. Rollins College*, 6:18-cv-1069-Orl-

37KRS, pg. 11 (M.D. Fla.  Jan. 16, 2019), the Florida District Court ruled Plaintiff's

breach of contract claims could withstand Defendant's 12(b)(6) motion.  Just like in this

case, Plaintiff contended that his enrollment in college, payment of tuition and fees, and

attendance gave rise to a relationship, contractual in nature.  The terms of this contract

were set forth in the student handbook and in his college's policies and procedures, which

incorporated the sexual misconduct policy and accompanying student Bill of Rights.

In *Doe v. George Washington*, 305 F.Supp.3d 126,  (D.D.C. 2018), over

Defendant's objection, despite the fact that the Code of Conduct was written and could be

changed unilaterally by the school, the Court granted plaintiff's motion for partial summary judgment finding that the Code of Conduct was a contract between the student and his school.

In *Doe v. Univ. of Notre Dame*, 2017 WL 1836939 (N.D. Ind. May 8, 2017), the Indiana District Court granted Plaintiff's Motion for a temporary restraining order.  That Court found Plaintiff could allege a valid breach of contract claim based on Notre Dame's failure to provide a "prompt, fair and impartial investigation and resolution" of disciplinary complaints involving sexual violence, stalking and dating violence. Accordingly. the general promise from that student code of conduct was found to be an identifiable contractual promise.

Defendant took Plaintiff's tuition money and Plaintiff performed the hard work necessary to complete all academic course credits required for other similarly situated students to receive a degree from Washington University.  Defendant's Motion does not dispute that Plaintiff has met all the academic requirements for a diploma/degree.

Unlike *Rice v. West End Motors, Co.*, 905 S.W.2d 541 (Mo. App. E.D. 1995), cited on page 27 of Defendant's Motion, Plaintiff's tuition checks were cashed, and his funds have not been returned.

Defendant's USAIB Procedure appears to be an unconscionable adhesion contract, as it appears to be "a form contract created and imposed by a stronger party upon a weaker party on a take this or nothing basis, the terms of which unexpectedly or unconscionably limit the obligations of the drafting party."  *Park Irmat Drug Corp., v. Express Scripts Holding Co.*, 911 F.3d 505, at pg 513 (Mo. Ct. Ap. 2013).

Unlike in the at-will employment context where the employer is imposing policies on workers for their continued receipt of a paycheck, Plaintiff is paying Defendant for the education and credits required to obtain a degree, and Defendant is imposing policies on students.  Students who do not agree to the policies are forced to either lose their tuition money or continue going to school under the belief that they will be entitled to obtain a degree once they complete enough credits for graduation.

If the Court believes Defendant's only contractual duty was to provide Plaintiff with education, then discovery will likely reveal whether Defendant gave Plaintiff any consideration as would be required to modify an existing employment contract between an at-will employee and his private employer.  *See, e.g., Doyle v. Holy Cross Hospital*, 186 Ill.2d 104, 112-113 (N.D. Ill., Mar. 29, 1999) (holding that after an employer is contractually bound to the provisions of an employee handbook, unilateral modification of its terms by the employer to an employee's disadvantage fails for lack of consideration).

Assuming Defendant would rather admit USCC and USAIB Procedures are part of the contract than admit to a wrongful expulsion, the Amended Complaint sufficiently pleads facts to infer that Plaintiff continued to attend college at Washington University because he believed he would not lose his investment of time and money towards a Washington University degree absent a fair and just process to resolve any allegations of sexual assault.

The USCC may say the Defendant can suspend a student, but the contract is absent any language that would permit Defendant to withhold Plaintiff's degree after he

29

had successfully completed all credits required for similarly situated students to receive their undergraduate degrees and begin pursing post-graduate opportunities.

Unlike all the cases cited in Defendant's Motion, in this case, the Plaintiff had completed all of the credits required to receive his diploma and was still not issued a degree.  Defendant should have issued Plaintiff a degree once he completed the required credits and there is nothing in the USCC that would give Plaintiff notice that the University could withhold his degree, even after issuing a sanction of expulsion.

Although Plaintiff was guaranteed a fair and just process to resolve any allegations of sexual assault, Defendant knew that its process was biased (against men and against students accused of sexual assault).  Subjecting Plaintiff to prosecution for a sexual assault claim using USAIB Procedures and training materials clearly breached Plaintiff's duty to provide Defendant with a fair (impartial) and just (based on reliable and sufficient evidence) process prior to wrongfully withholding his degree.

Unlike the general policy statements in the university rules from *Luccero v. Curators of Univ. of Missouri*, 400 S.W.3d 1, 4-5 (Mo. App. W.D. 2013), this case, like in many others, are factually distinguishable from *Luccero*.  *See, e.g., Doe v. Amherst College*, 238 F.Supp.3d 195 (D. Mass., Feb. 28, 2017); *Doe v. George Washington Univ.*, 305 F.Supp.3d 126 (D.D.C., April 25, 2018); *Doe v. Brown Univ.*, 210 F.Supp.3d 310 (D.R.I. Sept. 28, 2016); *Doe v. Univ. of Notre Dame*, 2017 U.S. Dist. LEXIS 69645 (N.D. Ind. May 8, 2017); *Doe v. Case Western Reserve Univ.*, 2017 U.S. Dist. LEXIS 142002 (N.D. Ohio Sept. 1, 2017); *Doe v. Rollins College*, 2019 U.S. Dist. LEXIS 7437 (M.D. Fla. Jan. 16, 2019); *Doe v. Trs. of Boston Coll.*, 892 F.3d 67 (1st Cir. 2018); *Doe v. Syracuse Univ.*, 5:18-cv-00377-DNH-DEP, Memorandum-Decision and Order filed May

8, 2019 (N.D.N.Y.) (Court denied Defendant's motion to dismiss a breach of contract claim based on Syracuse's failure to adhere to the preponderance of evidence standard established by its student code); *Montague v. Yale Univ.*, 3:16-cv-00885-AVC, Ruling on Defendant's Motion for Summary Judgment filed Mar. 29, 2019 (D. Conn.) (Court denied summary judgment on plaintiff's breach of contract claim based on Yale's breach of its promise to adjudicate sexual misconduct allegations using a fair, thorough, and impartial process); *Neal v. Colorado State Univ.*, 2017 WL 633045, *Doe v. Grinnell College*, 4:17-cv-00079-RGE-SBJ, Opinion filed July 9, 2019 at pages 30-37; and *Doe v. Quinnipiac Univ.*, 3:17-cv-00364-JBA, Ruling dated July 10, 2019, at pages 34-43.

"In Missouri, all contracts have an implied covenant of good faith and fair dealing." *Luccero*, at pg. 9.  Defendant does not dispute the allegations that it breached its implied covenant of good faith and fair dealing, it instead argues the USCC and USAIB Procedures were not enforceable contracts.

If the Court determines that a contractual relationship exists between the parties, then the Complaint sufficiently pleads facts supporting Defendant's willful breach of its implied covenant of good faith and fair dealing with respect to its decisions to wrongfully withhold Plaintiff's degree and to prosecute Plaintiff using biased USAIB Procedures that gave him little chance to prove his innocence, then no chance to successfully appeal a wrongful conviction.

## IV.   CLAIMS FOR PROMISSORY ESTOPPEL AND UNJUST ENRICHMENT MUST STAND

In Count 6 for Promissory Estoppel, Plaintiff is seeking his degree and a reversal of his wrongful conviction, not monetary damages, caused by Defendant's failure to uphold its promise to award his degree after he successfully completed the required

courses.  Count 6 seeks a reversal of the Defendant's conviction in Jane Roe's case due to its failure to fulfill its promise to Plaintiff that he would not be expelled without first being provided with a fair and equitable procedure and a just result using the preponderance of evidence standard.

In the employment context, and only when plaintiffs cannot establish an employment contract in the first place, promissory estoppel may not be a valid claim. However, none of the employment handbook cases cited by Defendant compare to the facts of this case and promissory estoppel is certainly a valid cause of action against Defendant.

It would be unjust for Defendant to retain all of plaintiff's tuition then deny him his diploma/degree after he completes enough credits for female students to obtain a degree.  Defendant would like the Court to believe that students merely go there for the education, not for education *and* a diploma, only the latter of which is required for students to pursue graduate school and job opportunities.

If the Court agrees that undergraduate students in Missouri contract with colleges for education and the chance to earn a degree, then the  Court should find there was an implied contract between the parties whereby Defendant agreed to furnish Plaintiff with a Washington University degree upon Plaintiff paying the required tuition then successfully completing the required academic course credits.

## V.    NEGLIGENCE - FORESEEABLE RISK OF ERRONEOUS EXPULSION

Generally, a private university does not owe a duty of due care to another, but exceptions to this general rule exists "(1) where there was a special relationship between the defendant and the plaintiff; (2) where the defendant's own conduct created a

foreseeable risk of harm to the plaintiff; [or] (3) where the defendant voluntarily assumed a duty of care toward the plaintiff." *Doe v. Univ. of St. Thomas*, 240 F.Supp.3d 984, at 995 (D. Minn. 2017).  *See also*, *Doe v. Univ. of the South*, No. 9-62, 2011 WL 1258104, at *20-21 (E.D. Tenn. Mar. 31, 2011) (applying the "foreseeable risk of harm" duty to a university's implementation of a disciplinary policy).  Whether such a duty arises "requires a careful consideration of the particular facts of the case." *Shank v. Carleton Coll.*, No. 16-1154, 232 F.Supp.3d 1100, 1111 (D. Minn. Jan. 9, 2017).

Unlike *Nickel v. Stephens College*, in this case, Defendant's student code and USAIB Procedures were cited as the basis for Plaintiff's expulsion then used to justify Defendant's failure to give Plaintiff his degree.  Unlike the negligence claim in *Wirth v. College of the Ozarks*, 26 F.Supp.2d 1185 (W.D. Mo. 1998), in this case, Plaintiff is not claiming negligent discharge or negligent investigation.

Defendant learned about the claims against Plaintiff in April 2018.  Considering the scores of pre-April 2018 federal court opinions in Title IX cases brought by men claiming erroneous convictions, the 2017 Dear Colleague Letter, and non-fiction books like *The Campus Rape Frenzy The Attack on Due Process at America's Universities*, by KC Johnson and Stuart Taylor, Jr., published by Encounter Books on Jan. 24, 2017, Defendant certainly had notice that its USAIB Procedures could result in an arbitrary expulsion in certain cases.  Specifically, Defendant knew that using USAIB Procedures in a case like this, where there was no corroborating witness testimony or physical evidence to support Jane's claims of sexual assault and the allegation was based entirely on Jane's spotty memory.

Minnesota courts have recognized a common law duty on the part of private universities not to expel students in an arbitrary manner, and that is the source of the duty Defendant breached in Count 11.  *See Rollins v. Cardinal Stritch Univ.*, 626 N.W.2d 464 (Minn. Ct. App. 2001) (citing *Harvey v. Palmer College of Chiropractic*, 363 N.W.2d 443 (Iowa App. 1994) and *Abbariao v. Hamline Univ. School of Law*, 258 N.W.2d 108 (Minn. 1977) ("a private university may not expel a student arbitrarily, unreasonably, or in bad faith")).  Plaintiff's negligence claim is based on the foreseeable risk that Defendant knew it was taking when it decided to use USAIB Procedures, without making any necessary procedural modifications, to prosecute Jane's claim.  Defendant knew using USAIB Procedures instead of USCC hearing procedure would increase the chance of an erroneous outcome which Defendant knew would cause Plaintiff to arbitrarily lose his hard-earned degree.

If Defendant negligently selected the Panel members in a manner that failed to determine whether they could be impartial, then Defendant's negligent *voir dire* was the proximate cause of the erroneous outcome in this case.  If Defendant selected 3 biased Panel members, then such conduct clearly involves a foreseeable risk that Plaintiff will get expelled arbitrarily, unreasonably, or in bad faith.

Assuming the Panel members listened to or read about public statements made by Plaintiff's accusers, causing them to assume that Plaintiff was a serial offender, then Defendant's training materials would only exacerbate the bias against Plaintiff and could certainly be found to have created a foreseeable risk of harm to Plaintiff.

The St. Louis County Circuit Court may have dismissed a negligence claim in *Doe v. Washington Univ.*, Case No. 16SL-CC04392 (Sept. 25, 2017), attached as Exhibit

A to Defendant Motion, but Defendant failed to provide the facts, student code sections and contracts at issue in that case, so its relevance is currently questionable.  Since the Circuit Court's decision fails to discuss the foreseeable risk of harm duty mentioned in *Doe v. Univ. of St. Thomas*, the prior state lawsuit against Defendant is not controlling when this Court analyzes whether Plaintiff's negligence claim sufficiently states a cause of action.

Although the Minnesota District Court denied Plaintiff's motion for a preliminary injunction, in *Doe v. Blake School*, 310 F.Supp.3d 969, at *985 (D. Minn. 2018), that Court wanted to make sure the message was clear: "victims of sexual misconduct, those who stand accused, and society as a whole all benefit from ensuring that allegations of sexual misconduct are handled in a non-negligent and non-discriminatory manner."

WHEREFORE, Plaintiff respectfully requests that this Honorable Court deny Defendant's Motion in its entirety, or in the alternative, and only if necessary to survive dismissal, Plaintiff requests leave to file a second amended complaint, and for such other relief as the Court deems fair and just including but not limited to an order entering judgment on the pleadings in favor of Plaintiff on the Title IX and Contract claims, and the entry of a preliminary injunction ordering Defendant to provide Plaintiff with his degree and transcripts on or before August 30, 2019 so as to not further prevent him from beginning law school.

Respectfully submitted,


BY:   /s/ John G. Covert
        One of his attorneys

JOHN GALT COVERT
U.S. District Court for the Eastern District of Missouri - Bar #6285969IL
The Llorens Law Group, Ltd.
20 N. Clark St., 33rd Floor
Chicago, Illinois 60602
(312) 602-2747
j.covert@llorenslawgroup.com