UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

JOHN DOE,

    Plaintiff,

v.

WASHINGTON UNIVERSITY,

    Defendant.

Case No.: 4:19-cv-00300-JMB

# REPLY OF DEFENDANT WASHINGTON UNIVERSITY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

John Doe's Memorandum in Response ("Response") to the Motion of Washington University (the "University") to Dismiss Doe's Amended Complaint once again confirms that the only basis for this lawsuit is Doe's disagreement with the evidentiary findings and outcome of the student disciplinary proceeding against him.  Doe admits throughout his Response that he is asking this Court to conduct a *de novo* review of his disciplinary proceeding, Response, p. 1 (Doe is "asking for a rational review of the evidence"), and to make new law with respect to his constitutional, statutory, and state law claims.  *See* Response, p. 7 ("Plaintiff admits that government inaction cannot generally transform a private university into a state actor"); p. 20 (acknowledges "USAIB procedures say they apply to male and female students equally"); p. 24 ("Missouri has yet to recognize student codes as contracts"); p. 32 ("Generally, a private university does not owe a duty of care to another").  Because Doe's Amended Complaint offers no plausible allegations of state action, gender bias, or the existence or breach of any contractual or tort law duties on the part of the University, the Motion to Dismiss must be granted.

I.      **Doe Cites No Authority to Support His Theory that the University was Performing a Public Function When Investigating and Determining Jane's Sexual Assault Claim**

Doe contends that the University is a state actor subject to his constitutional claims in Counts 1 and 8-10 because it was performing a public function when investigating and determining Jane's sexual assault claim. Doe fails to cite a single case that applies this theory to a private university's student disciplinary proceedings. Moreover, Doe's theory is unsupported by, and inconsistent with, the allegations in the Amended Complaint.

All of Doe's constitutional claims are rooted in the Fourteenth Amendment, which applies to a private entity like the University only "when it can be said that the State is *responsible* for the specific conduct of which the plaintiff complains." *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982) (emphasis in original); *see George v. Averett Univ. of Danville, Virginia,* 2019 WL 3310517, *2 (W.D. Va. July 23, 2019) ("Private institutions are not bound by the Due Process requirements of the 14th Amendment"). Yet Doe's complaints lie solely with actions taken by the University. Specifically, Doe points to the University's "actions and inactions . . . concerning a false accusation of sexual assault" against him, including the University's "grievous mishandling of the accusation and its deeply flawed and biased disciplinary process." Amended Complaint, ¶¶1, 5. Notably absent from Doe's Response is a reference to any factual allegations in the Amended Complaint to show that the state played a role in the University's disciplinary proceedings. As Doe concedes, government inaction does not transform a private university into a state actor. Response, p. 7.

Doe's argument is that the University was itself performing a public function when investigating and determining the sexual assault claim against him. Although Doe claims this is a novel, unresolved question of law, courts have consistently found that a private university's internal investigative and decision making process involving sexual misconduct

2

allegations is not a public function for purposes of the Fourteenth Amendment. *See, e.g., Woytowicz v. George Washington University*, 327 F.Supp.3d 105, 116 (D.D.C. 2018) (dismissing § 1983 claim against private university because the university's investigation and discipline of employee for sexual harassment did not amount to a public function); *Collins v. Northwestern University*, 164 F.Supp.3d 1071, 1076-77 (N.D. Ill. 2016) (same).

Doe's reliance on *Scott v. Northwestern Univ. School of Law*, 1999 WL 134059 (N.D. Ill., March 8, 1999), is misplaced. *Scott* did not involve a student disciplinary proceeding. In *Scott,* plaintiff brought a § 1983 claim against a private university, claiming that university police officers vested by the State of Illinois with the same arrest powers as municipal police arrested and detained him without probable cause. Here, Doe has not alleged that the University's police department was involved at any stage of his disciplinary proceeding. Nor does Doe identify any government act delegating the state's prosecutorial authority to the University. His conclusory allegation that the University's investigation and resolution of the sexual assault complaint in this case was the result of an "ongoing understanding and covert conspiracy" between the University and local law enforcement, Response, pp. 6-7, is unsupported by any facts in the Amended Complaint. Therefore, it is insufficient as a matter of law to state a claim premised on the University performing a public function.

Because Doe has failed to allege any facts to show that the University's disciplinary proceedings are attributable to the state, his constitutional claims in Counts 1 and 8-10 must be dismissed.

## II. Doe Has Not Adequately Pled Gender Bias or the Other Necessary Elements of the Title IX Claims Asserted in Counts 2-4 of the Amended Complaint

A necessary element of any theory of liability under Title IX is gender bias on the part of the defendant. *See In re Doe by and through Doe v. Saint Paul Conservatory for the*

3

*Performing Arts,* 2018 WL 2431849, *3 (D. Minn. May 30, 2018) (to allege a Title IX claim, plaintiff must plausibly allege circumstances suggesting gender bias motivated the school's actions), *citing Doe v. Univ. of St. Thomas,* 240 F.Supp.3d 984, 990 (D. Minn. 2017); *Doe v. Columbia College Chicago,* 299 F.Supp.3d 939, 950 (N.D. Ill. 2017) ("All of these Title IX discrimination theories . . . require allegations of gender-based conduct" that rise above the speculative level). As reflected in the recent cases cited in the University's Memorandum, Doe cannot state a claim by making conclusory and unsupported allegations that he was wrongly found responsible for sexual assault because of his gender.

In support of his contention of gender bias, Doe spends three pages of his Response arguing the evidence. Response, pp. 13-15. This shows his claim of gender bias is based on nothing more than the fact the Panel rejected his version of events. He cites absolutely no facts to support his claim there has been gender bias by the University in the treatment of others similarly accused. Doe also acknowledges that he was found not responsible on two other misconduct charges brought by female students, one alleging sexual assault and one alleging physical assault. Response, p. 16. Given these circumstances, Doe does not and cannot plausibly allege he was the victim of sex discrimination by the University in its disciplinary process.

In an effort to salvage his Title IX claims, Doe selectively cites cases denying motions to dismiss and argues they support the adequacy of his pleading.[1] *See* Response, pp. 5, 18.

---

[1] Doe erroneously states that the cases relied on by the University to support its Motion to Dismiss the Title IX claims "allowed discovery then ruled against the plaintiffs on summary judgment motions." Response, p. 10. In fact, most of the cases cited by the University involved dismissals. *See* Memorandum in Support, pp. 15-20, *citing, e.g., Salau v. Denton,* 139 F.Supp.3d 989 (W.D. Mo. 2015); *Doe v. Columbia College Chicago,* 299 F.Supp.3d 939 (N.D. Ill 2017); *K.T. v. Culver-Stockton College,* 865 F.3d 1054 (8th Cir. 2017); *Doe v. St. John's University,* 2017 WL 4863066 (D. Minn. Oct. 26, 2017); *Doe by and through Doe v.*

4

But these cases, even if they were consistent with Eighth Circuit and Missouri precedent, merely illustrate the inadequacy of Doe's pleading.  They rely on unique facts that are not alleged in the Amended Complaint.  *See, e.g., Doe v. Columbia University,* 831 F.3d 46 (2d Cir. 2016) (factual allegations that university criticized by New York Post for turning blind eye to female accusers; 23 complaints had been filed with Department of Education that university mishandled sexual assault complaints; investigator had been criticized by public press for not taking complaints of female students seriously; and University had been accused of preferential treatment of male athletes); *Doe v. Purdue Univ.,* 928 F.3d 652 (7th Cir. 2019) (plausible inference of bias where panel found in favor of complainant who did not even appear at hearing or personally submit a written statement of the events); *Wells v. Xavier University,* 7 F.Supp.3d 746 (S.D. Ohio 2014) (finding sufficient under Title IX allegations that university succumbed to pressure to scapegoat male athlete, despite warnings from local prosecutor who doubted female student's complaint, because of recent OCR investigation into insufficient response to another male student accused of sexual assault).  Here, Doe merely alleges expressions of sympathy toward victims regardless of gender, which courts have consistently held do not support a claim of gender bias under Title IX.  *See Saint Paul Conservatory,* 2018 WL 2431849 at *4 (alleged bias in favor of victims and against perpetrators is not the equivalent of bias against male students).[2]

---

*Saint Paul Conservatory for the Performing Arts,* 2018 WL 2431849 (D. Minn. May 30, 2018); *Doe v. Princeton University,* 2018 WL 2396685 (D. N.J. Feb. 6, 2018); *Doe v. University of Arkansas-Fayetteville,* 2019 WL 1493701 (W.D. Ark. April 3, 2019).

[2] In a recent case relied on by Doe, the court refused to find a colorable claim of gender bias based on training materials or campus political climate.  Response p. 13, *citing Doe v. Grinnell College,* U.S.D.C., S.D. Iowa No. 4:17-cv-00079 (Order Granting in Part and Denying in Part Summary Judgment 7/9/19).  The *Grinnell College* case, to the extent it allowed plaintiff's Title IX claim to proceed, relied on facts not present in this case, such as

5

Doe's claim of a Title IX violation, and in particular his allegation of erroneous outcome, relies on the flawed presumption that if more male than female students are accused of sexual assault, any sexual assault investigation must be infected with gender bias. If Doe's presumption were true, then any male student found to have committed sexual assault would have an automatic Title IX claim. The courts have rejected this presumption as the basis for an erroneous outcome claim. *See, e.g., Salau v. Denton,* 139 F.Supp.3d 989, 999 (W.D. Mo. 2015) ("Conclusory allegations without supporting facts of gender bias, like Plaintiff's assertion that 'male respondents in sexual misconduct cases . . . are invariably found guilty, regardless of the evidence,' are insufficient to survive a motion to dismiss"); *Doe v. Loh,* 2018 WL 1535495, *9-10 (D. Md. March 29, 2018) (dismissing erroneous outcome claim based on conclusory allegations that there was federal pressure to prosecute sexual misconduct cases against men, virtually all cases of sexual misconduct at the university involved men, the disciplinary policy was biased despite being written in a facially neutral manner, and the university sponsored events to raise awareness of violence against women), *aff'd per curiam,* (4th Cir. 4/24/19).

"[N]umerous courts have held a court 'cannot plausibly infer . . . a higher rate of sexual assaults committed by men against women, or filed by women against men, indicates discriminatory treatment of males accused of sexual assault.'" *Doe v. Univ. of St. Thomas,* 240 F.Supp.3d 984, 991 (D. Minn. 2017) (citations omitted). And Doe's argument that the USAIB Procedures are gender-biased because they are different from those applicable to non-sexual

---

material failures by the university to comply with its procedures and evidence of bias in another investigation. Doe also cites *Doe v. Quinnipiac University,* 2019 WL 3003830 (D. Conn. July 10, 2019). Response, p. 13. In that case, plaintiff's Title IX claim survived summary judgment due to proof of spoliation of material evidence by the university and the admitted application of different standards to male and female claims.

6

offenses under the Student Conduct Code is refuted by the procedures themselves.  Each set of procedures expressly applies to students who commit the covered offenses regardless of the student's gender.  *See* Amended Complaint, Exs. 1 and 2.

Doe's Response also attempts to support his "deliberate indifference/selective enforcement" claims by arguing he informed the University "that females had filed Title IX Complaints against him in bad faith, but Defendant failed to investigate or prosecute these similarly situated female students . . . ."  Response, p. 22.  First, deliberate indifference claims have traditionally required allegations of *sexual* harassment of the plaintiff known to the defendant and which the defendant ignored.  *See, e.g., Univ. of St. Thomas,* 240 F.Supp.3d at 990 n.2.  Doe has not alleged he was sexually harassed.  Selective enforcement requires that plaintiff demonstrate that similarly situated females are treated more favorably by the defendant.  *Doe v. Princeton University,* 2018 WL 2396685, *5 (D.N.J. Feb. 6, 2018).  Here, similarly situated females would be those accused, like Doe, of sexual assault.  Doe does not allege that females accused of sexual assault are treated more favorably by the University than males.

Doe's allegation that the University failed to take action when a female student purportedly harassed Doe by filing or encouraging Title IX complaints against him does not satisfy these pleading thresholds for a claim of selective enforcement or deliberate indifference.  The University was not deliberately indifferent to this accusation because, as Doe acknowledges, he raised it as a defense in his disciplinary proceeding and the Panel considered it on the merits.  *See* Response, p. 16, n.12; Amended Complaint, Ex. 13, p. 6 (noting Doe's claim that witness played key role in convincing Jane to file her complaint because she wished to sabotage Doe's education, and finding based on totality of evidence before Panel that Jane was not unduly influenced to proceed with the complaint).

Nor does Doe's persecution theory support a claim of selective enforcement. Doe does not allege that he filed or attempted to file a formal complaint, based on Title IX or otherwise, against this female student and was rebuffed by the University.[3] Therefore, there are no plausible allegations that the University was either deliberately indifferent to a claim of harassment (sexual or otherwise) against Doe, or that similarly situated female students were treated differently from male students.

As courts have repeatedly stressed, "'Title IX is not an invitation for courts to second-guess disciplinary decisions of colleges or universities.'" *Does 1-2 v. Regents of the University of Minnesota,* 2019 WL 2601801, *3 (D. Minn. June 25, 2019), *appeal pending* (8th Cir. No. 19-2552) (granting motion to dismiss male students' Title IX claims where supported only by alleged favorable treatment of victim and pressure from "Dear Colleague" letter), *quoting Doe v. Univ. of St. Thomas,* 240 F.Supp.3d 984, 989 (D. Minn. 2017). Doe insists that he "provided the only account of what actually happened, yet due to gender biased beliefs, all 3 Panel members chose not to believe the truth." Response p. 16. In essence, Doe argues the Panel was required to believe his version of events because Jane testified she blacked out after consuming the alcohol Doe gave her. Amended Complaint, Ex. 13, p. 2. The Panel was not obligated to accept this self-serving logic, and there is no legal or factual basis for the Court to require the University to do so.

---

[3] Doe states in his Response, without any citation to an allegation in the Amended Complaint, that he was told "he would be punished" if he continued to speak about this alleged conspiracy by female students "to ruin his future by filing false Title IX Complaints." Response, p. 22. To support this assertion, Doe relies only on a reference to the USAIB's anti-retaliation policy. *See* Amended Complaint, Ex. 1, pp. 9-10. That the USAIB contains a provision that retaliation against individuals who report violations of University policy will not be tolerated in no way supports Plaintiff's assertion. In fact, Doe was permitted to argue at length in his disciplinary proceeding about this alleged "conspiracy" and was never charged with a violation of the anti-retaliation provision of the USAIB.

### III. Doe Acknowledges No Missouri Authority Supports the State Law Causes of Action Alleged In Counts 5-7 of the Amended Complaint

As demonstrated in the University's Memorandum in Support of Motion to Dismiss, pp., 21-23, and acknowledged in Doe's Response, p. 24, Missouri courts have not found university conduct codes to be enforceable contracts. *See Nickel v. Stephens College,* 480 S.W.3d 390, 397 & n.6 (Mo. App. W.D. 2015) (no Missouri judicial authority recognizes a contractual relationship between a university and its student); *Lucero v. Curators of University of Missouri,* 400 S.W.3d 1, 4-5 (Mo. App. W.D. 2013) ("the parties have not cited, nor has our research uncovered, any case law in Missouri that expressly finds the existence of a contractual relationship between a student and a university").  Nor have any Missouri courts applied the legal theories of promissory estoppel, unjust enrichment, or negligence to provide remedies for the expulsion of a student from a private university. *See Nickel,* 480 S.W.3d at 400 (rejecting allegation of "amorphous legal duty" to support negligence action in connection with college administrative decisions relating to a student's enrollment status).[4]

Doe has not cited a single Missouri case to the contrary.  He relies only on cases from other jurisdictions applying state law inconsistent with the law of Missouri. *See* Response, pp. 26-28 (citing cases applying Connecticut, Massachusetts, Florida and Indiana law on breach of contract); p. 34 (citing Minnesota cases on negligence).  Therefore, this Court should dismiss Doe's state law causes of action in Counts 5-7 of the Amended Complaint because they are unsupported by Missouri law.

---

[4] Doe acknowledges that, in 2017, a St. Louis County Circuit Court dismissed a University student's breach of contract, promissory estoppel, negligence and breach of fiduciary duty claims for failure to state a claim. *See* University Memorandum, Ex. A.  Doe argues the decision is not relevant because it contains insufficient factual background. Response, pp. 34-35.  However, the decision makes clear that, like here, the "John Doe" plaintiff was challenging a sanction imposed by the University after a Title IX hearing. *See id.*

9

Even if these state law causes of action were recognized in the context of a private student disciplinary proceeding, Doe continues to fail to identify any action by the University that breached, let alone in a material way, any duty of care or any provision of the USAIB Procedures.  He argues that he may proceed with these claims even if he has failed to plead specific deviations from the USAIB and SCC, because the disciplinary proceeding "was unfair" and the decision "was erroneous."   Response, p. 25.  However, Doe has not identified in his Amended Complaint or his Response any provision of the USAIB that was not followed, or any evidence not considered by the Panel that would have changed its decision. The exhibits attached to the Amended Complaint demonstrate that Doe was provided notice of the claim against him, multiple opportunities to respond in person and in writing with the assistance of counsel, and an avenue for appeal.  Again, he simply disagrees with the result and concludes that it must be due to improper bias.  Such unfounded speculation cannot substitute for a factual allegation of a material breach of a putative contractual or tort duty. For this independent reason, Doe's state law claims must be dismissed.

## **CONCLUSION**

For the reasons stated above and set forth in the University's Memorandum in Support of Motion to Dismiss, the Amended Complaint should be dismissed.

HAAR & WOODS, LLP


      /s/ Lisa A. Pake
Robert T. Haar, #30044 MO
Lisa A. Pake, #39397 MO
Matthew A. Martin, #64000 MO
1010 Market Street, Suite 1620
St. Louis, Missouri 63101
(314) 241-2224
(314) 241-2227 (facsimile)
roberthaar@haar-woods.com
lpake@haar-woods.com
mmartin@haar-woods.com

*Attorneys for Defendant*
*Washington University*

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of July, 2019, the foregoing was served via e-mail and filed electronically to be served by operation of the CM/ECF system upon all counsel of record.


      /s/ Lisa A. Pake